### In re M. ZIER & CO.

#### (District Court, D. Indiana. January 4, 1904.)

#### No. 37.

1. BANKRUPTCY—ALLOWANCE TO ATTORNEY—SERVICES RENDERED IN STATE RECEIVERSHIP.

   An attorney who instituted and conducted a collusive suit in a state court against an insolvent corporation, the purpose of which was to prevent bankruptcy proceedings, and enable his clients to retain preferences received in violation of the bankruptcy law; who obtained the appointment of a receiver therein, and became its attorney, and, in the course of his employment, obtained injunctions and citations for contempt against creditors, and the marshal and receiver of the court of bankruptcy, dispossessed such receiver by force, and endeavored in every way to prevent and obstruct the bankruptcy proceedings, in the interest of the preferred creditors—is not entitled to an allowance from the estate in bankruptcy on account of services rendered to the state receiver, under the rule that such allowance will only be made when the services are beneficial to the estate; nor will he be allowed for such services as were beneficial, where, as a whole, his services cost the estate and general creditors several times the amount, in increased expenses of administration.

In Bankruptcy. On review of order of referee allowing claim of W. W. & J. R. Watts.

Stotsenberg & Weathers and George H. Hester, for trustee and creditors.

Bernard Flexner, for claimants.

ANDERSON, District Judge. This is a claim by the firm of William W. & John R. Watts, of Louisville, Ky., for an allowance of $1,250 on account of services rendered by William W. Watts, as a member of the firm, between December 30, 1902, and February 19, 1903, in the case of Joseph T. Ryerson & Son, an Illinois corporation, against M. Zier & Co., an Indiana corporation, in the Floyd circuit court, of Floyd county, Ind., as attorneys for the New Albany Trust Company, receiver of the Zier corporation by the appointment of that court. Their claim was originally submitted for the consideration of Lawrence B. Huckeby, referee in bankruptcy at New Albany, who allowed it; and it is now submitted for the consideration of this court, upon petitions of the trustee and particular creditors for a review of the order of allowance by the referee.

In such a review the court will take judicial knowledge of its own record and proceedings, as far as they furnish any information concerning the nature of the claim, and will consider them in connection with the proofs furnished by the referee under his certificate. Upon an examination of all this evidence, it appears that the suit in the Floyd circuit court was instituted in pursuance of an agreement between the Ryerson corporation and the Zier corporation, and they respectively became plaintiff and defendant therein. In making this agreement the Zier corporation was represented by Charles L. Jewett, a member of the firm of Jewett & Jewett, who also represented Minnie Zier, a sister-in-law of Michael Zier, the manager of the Zier corporation, and a stockholder and creditor of it. At the time of this agreement both the Ryerson corporation and Minnie Zier had received payments of money, in the respective sums of $3,100 and $9,600, from the Zier corporation, upon its indebtednes to them; the payment to Minnie Zier having been made upon the very day of this agreement. Both of these payments would have been unassailable in the suit which was agreed upon between the parties, and both payments were made under circumstances which rendered them assailable in a bankruptcy proceeding. It therefore was necessary, for the protection of these preferences, that a bankruptcy proceeding should be prevented or avoided.

In accordance with this agreement, which was made at Chicago, Ill., on the 29th day of December, 1902, the suit in the Floyd circuit court, at New Albany, Ind., was instituted on the following day. The Watts firm on the 30th day of December, 1902, as attorneys for the Ryerson corporation, filed its complaint against the Zier corporation, praying for the appointment of a receiver on account of its insolvency; the Zier corporation was immediately served with a summons, and voluntarily appeared at once, nearly two weeks before the summons was returnable, by the Jewett firm, as its attorneys; and thereupon the trust company was, on the same day, appointed receiver of its property and effects—the vice president of the trust company being a brother and partner of Charles L. Jewett. On the appointment of the trust company as receiver of the Zier corporation, the Watts firm became attorneys for the receiver, as well as attorneys for the Ryerson corporation, the plaintiff in the suit, and has acted for both in the progress of it.

On the 16th day of January, 1903, Watts, as attorney for the receiver, filed its petition in the Floyd circuit court, praying that the creditors might be notified to appear and make known their views concerning the operation of the plant of the Zier corporation, and be required to prove their claims in that suit, "and that all creditors and persons be enjoined and restrained from prosecuting suits involving this estate in any manner except by intervention in this action." A further hearing of the petition was fixed by the order thereon for January 24, 1903, "at the courtroom" of the Floyd circuit court, "on the advisability of continuing the operation of the plant of M. Zier & Co., and all kindred questions"; and the receiver was directed to notify the creditors, which was done accordingly. Neither the order nor the notice under it made any mention of that part of the petition which

prayed an injunction against the creditors. Nevertheless the appearance of all creditors who were present or represented at this meeting of the creditors was entered in the suit, and they were "enjoined and restrained" in accordance with the prayer of the petition, without any further warning or advice to them. Watts claimed that this proceeding created an estoppel on the part of the creditors against the institution of a proceeding in bankruptcy by them or any of them; and the whole object of it evidently was to create such an estoppel, and prevent the institution of a proceeding in bankruptcy against the Zier corporation.

A petition for adjudication of bankruptcy against the Zier corporation was filed by sundry creditors of it in this court on February 6, 1903, in which preferences of the Ryerson corporation and Minnie Zier were alleged as acts of bankruptcy, and a supplemental petition for such adjudication, in which the appointment of a receiver by the Floyd circuit court was alleged as an additional act of bankruptcy, and a petition for the appointment of a receiver of the Zier corporation by this court, were filed by them on February 11, 1903; and thereupon Frederick D. Conner was appointed such receiver, and authorized and directed by an order of this court to take possession of the property and effects of that corporation. The operation of this order was suspended, on the application of Watts, on February 13, 1903, until he might be heard in opposition thereto; and February 16, 1903, was appointed for the hearing. His application having been granted by this court, he applied for and obtained an order from the Floyd circuit court on the 14th day of February, 1903, enjoining and restraining the petitioning creditors and receiver in bankruptcy, and the marshal of this district, from interfering with the property of the Zier corporation in the possession of the trust company, and citing the petitioning creditors for contempt of that court in having instituted proceedings in bankruptcy in violation of its order of January 24, 1903. Having done so, he returned to this court, and on the 16th day of February, 1903, and the following day, was fully heard in opposition to the proceedings here. At the close of the hearing on the 17th day of February, 1903, he agreed in open court that the property of the Zier corporation in the possession of the trust company should be delivered to the receiver in bankruptcy, and it was accordingly delivered to him on the 19th day of February, 1903. But Watts thereupon invoked the aid of another member of the Louisville bar—David A. Sachs—and at their instance Charles D. Kelso was on the 20th day of February, 1903, appointed by the Floyd circuit court receiver of the Zier corporation, in the place and stead of the trust company, and the receiver in bankruptcy was forcibly dispossessed of the property under the orders of that court. Watts and Sachs were immediately attached for a contempt of this court, and upon trial were adjudged guilty, and sentenced to be imprisoned for two months in the Marion county jail. They were subsequently discharged from custody, upon their petition for a writ of habeas corpus, by the Supreme Court, upon the ground that they were honestly mistaken about the law, and did not, therefore, intentionally violate it. In re Watts and Sachs, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933. The Supreme

Court said on pages 27, 28, 190 U. S., pages 724, 725, 23 Sup. Ct., 47 L. Ed. 933:

"We think there can be no reasonable doubt that the judge of the Floyd circuit court and Messrs. Watts and Sachs entertained the conviction in good faith that the custody of the state court could not be lawfully interfered with by the bankruptcy court by summary proceedings. Their view was that, the jurisdiction of the state court having attached, that court was, in all circumstances, entitled to exercise it until voluntarily surrendered. But if the state court had taken into consideration that Zier & Co. had committed acts of bankruptcy in the matter of preferential transfers; that the amendatory bankruptcy act of February 5, 1903, provided that acts of bankruptcy would exist if a person, 'being insolvent, applied for a receiver or trustee for his property or because of insolvency a receiver or trustee has been put in charge of his property under the laws of a state, of a territory, or of the United States'; and that the intent of the bankruptcy law is to place the administration of affairs of insolvents exclusively under the jurisdiction of the bankruptcy courts—it appears to us that, instead of continuing the application of the federal receiver for three weeks, the court should have directed the surrender of the property to him at once, or at least after the report of its own receiver on returning from Indianapolis."

But the question of intent does not cut any figure in the consideration of a claim for the allowance of attorney's fees from an estate in bankruptcy. The rule of law applicable to such a case was fixed by the Supreme Court in Randolph v. Scruggs, 190 U. S. 533, 23 Sup. Ct. 710, 47 L. Ed. 1165. It was held, upon the facts in that case, that a claim for legal services rendered an assignee, under the general assignment law of a state, in resisting the adjudication of bankruptcy, was not allowable as a preferential claim, and that legal services rendered such an assignee are allowable only when they are beneficial to the estate of a bankrupt. The reason of this rule is that general creditors should pay for services which have actually benefited them. It was never intended to make them pay for unsuccessful assaults upon their interests, as well as for resistance to those assaults. The suit in the Floyd circuit court was collusive and fraudulent. It was fraudulent as against general creditors in bankruptcy, because it permitted the manager of an insolvent corporation to take from its assets a sum equal to one-third of them, and to apply that sum upon the claims of particular creditors. Its natural and inevitable result was to uphold and protect fraudulent preferences, while the bankruptcy proceedings were in the interest of all the creditors alike. Watts, as attorney for the receiver of the Floyd circuit court, aided in every possible way in the promotion of this result. He aided in the promotion of it by his efforts to create an estoppel on the part of the creditors, by obtaining injunctions against the receiver of this court and the marshal of this district, and against the petitioning creditors in bankruptcy, by procuring citations for contempt against them, and by his obstructive resistance to the orders and proceedings in bankruptcy, as well as in the forcible dispossession of the receiver of this court. He delayed and prevented the receiver of this court from taking and retaining possession of the property of the Zier corporation until it was finally delivered to him on the night of the 28th day of February, 1903, after sentence and judgment in the contempt cases against Kelso and others. While, under the circumstances of this case, he is justly chargeable with the knowledge of his clients, the

Ryerson corporation and the vice president of the trust company (through whose firm the payment to Minnie Zier was made), concerning the business in and about which he was employed by them, and presumably intended the natural and inevitable consequences of his own acts, any question of his knowledge or intention is wholly immaterial here. Whether decided one way or the other, the result is the same. It must be admitted that his professional services were not beneficial to the estate in bankruptcy, and he is not entitled to compensation for them from the general creditors, whose dividends would have been substantially diminished by his ultimate success. Incidentally he collected, without suit or adversary proceeding of any sort, and by the negotiation of settlements, the aggregate sum of $3,769.17 from five different parties, and claims to have made it possible for the receiver of this court to collect the additional sum of $1,966.28 from two other parties by his negotiations. If the services of Watts in negotiating these settlements might be detached from his general services as a whole, and considered separately, an allowance of $250 would be a reasonable compensation for them; but his aggressive misapprehension of the law, as it was affirmed by the Supreme Court in Re Watts and Sachs, supra, has cost the estate in bankruptcy and the general creditors several times that amount in expenses of administration, which should equitably be taxed against him, and neither it nor they should be mulcted any further.

Section 982 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 706] provides:

"If any attorney, proctor, or other person admitted to conduct causes in any court of the United States, or of any territory, appears to have multiplied the proceedings in any cause before such court, so as to increase costs unreasonably and vexatiously, he shall be required, by order of the court, to satisfy any excess of costs so increased."

The preparation of the inventory and appraisement of the property was the duty of the trust company, whose vice president was a lawyer. All expenses were incident to the general services that were rendered. His professional services, as a whole, were not beneficial to the estate in bankruptcy, and the order of the referee should be reversed and set aside, and the claim disallowed, and it is so ordered.