In the Matter of **GARRETT ROAD COR-PORATION**, In Bankruptcy.
No. 27958.

United States District Court
E. D. Pennsylvania.
July 21, 1966.

I. B. Sinclair, Media, Pa., for receiver.

Harold Cramer and Robert A. Bloom, of Shapiro, Stalberg, Cook, Murphy & Kalodner, Philadelphia, Pa., for petitioning creditor.

## OPINION AND ORDER

WOOD, District Judge.

This case involves the question whether the Bankruptcy Referee improperly awarded compensation to a Receiver for a corporation and his attorney appointed by a state court who continued to act as such for almost two years after an involuntary petition in bankruptcy had been filed. The orders in question are presently before us on the Referee's certificate for review of December 15, 1965.

In this case R. Winfield Baile was appointed Receiver for Garrett Road Corporation on April 24, 1963, in an equity proceeding in the Court of Common Pleas of Delaware, Pennsylvania. The action was brought pursuant to the provisions of Section 1107 of the Business Corporation Law of 1933. 15 Pa.Stat. tit. § 2852–1107, authorizing liquidation when there is a deadlocked board of directors. Mr. Baile then took possession of the assets and property of the bankrupt and proceeded to liquidate. Within four months of the appointment, on August 19, 1963, an involuntary petition in bankruptcy was properly filed. Hearings were held by the Referee on six different occasions, the last being on January 11, 1964. The Referee finally made an adjudication of bankruptcy on June 25, 1965. He directed the Receiver to turn over all of the assets of the estate to the trustee in bankruptcy and to make a final accounting.

When this was completed the Receiver and his attorney petitioned the court for allowances for their services. The Referee allowed the Receiver $18,000 and his attorney $5,000, about half of what the attorney had requested. Food Fair, a creditor, filed objections to the allowances and requested a certificate. The attorney for the Receiver also objected to the reduction of his request.

In the petition of the state court Receiver submitted to the Referee are included the various services which Mr. Baile rendered to the bankrupt estate. Mr. I. B. Sinclair, the attorney for Baile, submitted his own petition for compensation and allowance of expenses directly to the Referee, in which he outlined his services. The expenses per se of neither official were ultimately challenged before the Referee and were accordingly affirmed by him.

Mr. Baile in his first and final accounting to the Referee charged himself with inventory and receipts of $896,615.96. This figure consisted largely of three item numbers, 21.15 acres of vacant land inventoried at $615,000, seven duplex apartment houses inventoried at $161,930, and a contingent contractual asset valued at $50,000. The cash on hand turned over to the federal receiver was $93,378.65 while the entire assets approximated $155,000 although it is now agreed that the contingent asset of $50,000 is probably worthless.

The Referee in determining the amount of compensation for the Receiver said that "it is the duty of the Referee to determine the fair value of their services to the estate and allow compensation accordingly." He concluded that an allowance of $18,000 was not excessive on the basis of "my knowledge of the meticulous and careful handling of the assets in this estate over the two year period that the matter was before me on the issue of the adjudication and

when, from time to time, I was called upon to approve the sale or disposition of certain assets." The valuation was based "simply upon the valuation of services rendered." In compensating the Receiver's attorney, the Referee used as a test "what is fair and reasonable under all of the circumstances" and awarded him $5,000.

The Referee indicated several times in the course of the hearing on October 20, 1965, that he did not think $18,000 was an excessive fee and in fact stated that he might have given the Receiver more (N.T. p. 39 hearing 10/20/65) if he had so requested.

After the Bankruptcy Court has assumed jurisdiction, § 2a(21) of the Bankruptcy Act requires equity receivers, trustees, assignees and agents to deliver the property in their possession and under their control and "to account to the court for the disposition by them of the property of such bankrupt." And § 69d requires them to account "for any action taken * * * subsequent to the filing of such bankruptcy petition."

Under § 2a(21) and § 70a(8) the summary jurisdiction of the bankruptcy court has been held to extend not only to the review of amounts withheld by the assignee for expenses and compensation, Shor v. McGregor, 108 F.2d 421 (5th Cir. 1939), but also to a determination that the assignee should be denied any compensation because he acted for the benefit of the debtor and to the injury of creditors. In re Lucille's, Inc., 26 F. Supp. 943 (D.Me.1939). However, it has been held that § 2a(21) does not support the conclusion that a referee has jurisdiction to make allowances for a state court official for services to the estate, although § 2a(21) is not inconsistent with that conclusion. In re Marks, 267 F.2d 108 (7th Cir.1959).

■ The Bankruptcy Act does not expressly provide for a maximum fee or a standard for the determination of compensation of state court receivers. However, the task is not left to the state court whose jurisdiction is superseded once the petition is filed. In re Cohen, 64 F.2d 103 (2d Cir.1933). There seems to be little doubt, though, that under some theory the state court official, whether he is assignee for the benefit of creditors or equity receiver, is entitled to compensation for his services. See generally 3 Collier on Bankruptcy (14th Ed.) § 62.32 et seq. P. 1615. Section 48 of the Bankruptcy Act would be applicable if the Receiver herein had been appointed in the bankruptcy proceeding.

Randolph v. Scruggs, 190 U.S. 533, 23 S.Ct. 710, 47 L.Ed. 1165 (1903) is the leading case in the area of pre-bankruptcy expenditures and has influenced allowances far beyond its narrow bounds. There the Supreme Court announced the principle that costs of a superseded assignment for the benefit of creditors, including the attorney's fees for representing the assignee were entitled to first payment out of the bankrupt estate as a lien, to the extent they were beneficial and tended to the preservation of the assets. Counsel fees in connection with resisting the involuntary petition, however, could not qualify as services beneficial to the estate. The Court reasoned that reimbursement or allowances are due not as provable claims or even as costs of administration, but on the theory that the assignee would be entitled to deduct his allowable expenses from the property that he is required to surrender to the bankruptcy court.

■ The Supreme Court reasoning has been called into question because of the Chandler amendments in 1938 which make the right of an assignee to withhold an asset still in his possession at bankruptcy doubtful. See §§ 2a(21) and 69d. Treister, The Effect of Bankruptcy on the Administration Expenses of a Superseded General Assignment, 17 Bus. Law 332, 335 (1962). In this case there does not appear to be any conflict with any priorities, however, and the criticism is irrelevant. Moreover, the state receiver of Garrett Road did most of his work under the auspices of the Bankruptcy Court and would be entitled to a

priority under § 64 to the extent that the costs and expenses preserved the estate. At any rate, counsel for the objecting creditors does not dispute the continued vitality of *Randolph*.

■ In determining what has been of benefit to the estate, the Referee, of course, is not restricted to those services which have enlarged the estate or reduced the claims. Flaxman v. Gardner, 353 F.2d 764, 767 (9th Cir.1965). Thus employment of an auditor or an accountant to determine the assets and liabilities of the estate would certainly be beneficial in most cases to the estate. The following elements may be considered in evaluating the services of these state officers: "The time spent, the intricacy of the problems involved, the size of the estate, the opposition met, the results achieved—all subject to the economical spirit of the Bankruptcy Act." In re Owl Drug Co., 16 F.Supp. 139, 142 (D. C.Nev.1936), aff'd sub nom. B. F. Schlesinger & Sons, Inc. v. Edler, 81 F.2d 1015 (9th Cir.1936). See 3 Collier on Bankruptcy (14th Ed.) § 62.12, page 1491. The preceding factors are of course to be noticed only insofar as the services have tended to preserve or benefit the estate.

■ It is well settled that debts and fees of a state court receiver are in the same category as debts and fees of an assignee for the benefit of creditors prior to bankruptcy.

"Any real services, either of an assignee under a deed of assignment or of a receiver acting under judicial authority, will be allowed as a preferred claim in the administration of the property and the distribution of its proceeds to the extent that the services have benefited the estate."

Hume v. Myers, 242 F. 827, 830 (4th Cir.1917). See also, Paine v. Archer, 233 F. 259 (9th Cir.1916) and Chase Bag Co. v. Schouman, 129 F.2d 247 (6th Cir.1942).

Services performed after the petition in bankruptcy has been filed have also been held to be compensable only under the rule of the *Randolph* case. This view was formed on the equitable principle enunciated in that case that one should be compensated out of a fund which he has benefited or created. In re Cohen, 64 F.2d 103 (2d Cir.1933); In re Stewart, 179 F. 222 (6th Cir.1910). Although both cases discussing this point were instances where an assignee had been appointed, we see little reason for departing from the rationale. Both are performing services after the petition has been filed under the authority of the Bankruptcy Court and will in all event probably have their administrations superseded. Section 2a(21). Moreover, it has been said that only when the result of the efforts of officers are known do the elements on which the value of their services depend, appear in their proper perspective. In re Paramount-Publix Corp., 10 F.Supp. 504, 510 (S.D. N.Y.1934).

■ The Court in *Randolph* also concluded that "[n]o ground appears for allowing the item for services [to the assignee] in resisting an adjudication in bankruptcy." It has further been determined that this rule applies regardless of the intention of those resisting bankruptcy, since the injury and expense caused to the estate were unaffected by their motives. The reason in support was that general creditors should pay for services which have actually benefited them. In re M. Zier & Co., 127 F. 399 (D.C.Ind.1904); Aff'd. 142 F. 102 (7th Cir.1905). It was never intended to make them pay for unsuccessful assaults upon their interests as well as for resistance to those assaults. Obstruction of bankruptcy had been so great and persistent therein that even beneficial incidental services were held not compensable. See also In re Evenod Perfumer, Inc., 67 F.2d 878 (2d Cir. 1933) where the court refused to allow compensation to a bankrupt's attorney for his efforts in resisting bankruptcy. The sole claim to any reward must be measured by the extent of the labors of the state officers in preserving and keeping the estate. In re Sobol, 230 F.

652 (S.D.N.Y.1915) The unsecured creditors for whose sake and that of the bankrupt the procedures for bankruptcy exist, should not be unfairly deprived of assets when as it is they will not receive the full portion of their claims.

■■ Compensation in this case is a question which is primarily for the discretion of the Referee who should not be reversed unless he has abused such discretion or has applied an erroneous standard in determining compensation. In re F. P. Newport Corp., 137 F.Supp. 58 (S.D.Cal.1955). See § 38(6). If the Referee's decision is free from error of law and sufficiently supported by evidence, it should be affirmed. Collier on Bankruptcy § 62.12 P. 1486. The Referee's judgment in these matters is primary and the district court should not substitute its judgment for that of the Referee. The matter is at best a very ticklish problem and deserves careful consideration.

> "To leave the question to the referees tends to create uniformity of charges and allowances, while to repass upon the question here and substitute the judgment of this court for that of the referee would tend to create inequality and confusion. There is nothing more difficult nor embarrassing than to appraise the value of professional services. The appraisal must be based largely upon the personal opinion of the one who makes it." Matter of American Range & Foundry Co., 41 F.2d 845, 847, 848 (D.Minn.1926).

■ In the matter of compensating bankruptcy officials, although a great deal of discretion resides in the Referee, it is clear that "the judges of the courts, in fixing allowances for services to court officers, should be most careful, and * * * vicarious generosity in such a matter [should] receive no countenance." In re Gilbert, 276 U.S. 294, 296, 48 S.Ct. 309, 310, 72 L.Ed. 580 (1927). See also United States v. Code Products Corp., 362 F.2d 669, filed 6/28/66, 3rd Cir. The rights of those who ultimately pay must be carefully protected. Newton v. Consolidated Gas Co., 259 U.S. 101, 42 S.Ct. 438, 66 L.Ed. 844 (1921).

The objecting creditor argues strenuously in his well-written brief that § 48 of the Act should apply to officials appointed outside of bankruptcy proceedings as it applies to those appointed in bankruptcy. Their major support is that both officials do the identical work and thus should be compensated in an identical fashion. They have cited several referees who have taken the position that § 48 should be used as a rule of thumb to guide a referee in awarding compensation to a nonbankruptcy official.

■ While we agree that § 48 may be appropriate for a referee as a guideline, it should not become a hard and fast principle without approval of Congress. There is nothing in the Act itself or in any court decisions which have suggested this position.

The only case cited to us by counsel was In re Moskowitz, 25 F.Supp. 341 (E.D.N.Y.1938) wherein the District Judge approved an order of a referee allowing an assignee no more than a receiver in bankruptcy would receive. Section 48 was used by the Referee therein as a starting point and no more. He was not bound to apply § 48 and we do wish to so bind a referee.

Another referee in bankruptcy who has had occasion to consider the compensation of state officials has adopted this position:

> "You may ask whether there may be a useful yardstick to measure the value of the services of such a receiver or assignee for the benefit of creditors. To a large extent he has performed the same functions as a receiver in bankruptcy. Therefore, it seems logical to allow him the same commissions which a bankruptcy receiver might be allowed under similar circumstances. * * * This is the rule of thumb method we have used to advantage and so far without controversy." Snedecor, Fees and Allowances in Straight Bankruptcy, 40 J. of Nat'l Conf. of Referees in Bankruptcy, 26, 29 (1966).

The Receiver should not be bound by federal bankruptcy compensatory statutes since he was engaged by a state court and continued as such in a sense pending an adjudication. Since on the state of the record it appears that the Referee had difficulty in determining whether this corporation should be adjudged bankrupt, the Receiver might well have engaged in activities that a federal Receiver would not have commenced. Especially appealing to us is the probability that Mr. Baile might never have undertaken the duties after the petition had been filed if he had realized the amount of compensation which the objecting creditors now wish to limit him to. Moreover, as the Referee pointed out, and as it appears to us, at no point did anyone ever object during Baile's administration to anything he did, nor suggest that his compensation was restricted.

Under § 48, the creditor contends that the Receiver would be limited to approximately $2,500 in compensation. We have not judged the reasoning of Food Fair in this regard since we have ruled that § 48 is inapt.

Employment of appraisers or accountants without approval by a competent court does not necessarily mean that the Receiver forfeits his compensation. In re Cohen, 64 F.2d 103, 105 (2d Cir.1933). Granted for the sake of argument that the Receiver presumed to act in derogation of administration of the assets by the bankruptcy court, it is still the policy of the law to compensate one who has benefited the fund. Especially should this be so where the objecting creditor has not shown that the charges made were excessive. The objection herein seems to be at best a technical one, although the receiver may have erred in not seeking authorization for expenses.

The creditors suggest three reasons for limiting the compensation of the Receiver. First, the sale he made of land belonging to the bankrupt resulted in a large tax liability. Secondly, the Receiver did not secure the buyer of the land. Thirdly, the Receiver obstructed bankruptcy proceedings causing expense to the estate. The first two objections are bare conclusions unsupported by any evidence or legal reasoning and denied by Mr. Baile. The third objection is ponderous but it appears that Referee Wolfe considered this in his opinion in evaluating the worth of the service of the state court Receiver. The Receiver has specifically denied all of these allegations, in his answer to the objections filed by Food Fair. In addition, the Referee at the hearing of October 20, 1965, indicated his thought that Mr. Baile had been caught in a cross fire between other parties opposing bankruptcy.

The Referee was best able to gauge the value of the services of the Receiver, outlined in his petition for compensation. The Receiver appeared on numerous occasions before the Referee, submitted a number of accounts and otherwise requested Referee Wolfe many times to approve his suggestions. The Referee indicated that Mr. Baile performed these services in a noteworthy fashion and deserved a fair compensation therefor. We cannot say on the state of the present record that he clearly abused his discretion or erred as a matter of law in his final determinations. Although he did not use exact wording of the *Randolph* case as the standard for making his award, it is apparent from his opinion and from the transcript of the hearing on October 20, 1965, that he intended to compensate the Receiver only for what he had done to benefit or preserve the estate of the bankrupt. He said that he was determining the "fair valuation of the services to the estate" and considered the meticulous and careful handling of the assets. In the light of the approach which the Referee assumed, we cannot say that if he had had the *Randolph* case specifically in mind that he would not have decided as he did. Further, we cannot rule that as a matter of law the Referee abused his discretion in awarding $18,000 to the Receiver. The Receiver performed over a period of two years and was called on constantly during that period in aid of the estate. Moreover,

none of his actual accomplishments were questioned before the October 20, 1965, hearing. Therefore, we must affirm that part of the Referee's order awarding Mr. Baile $18,000.

■ As to the attorney fees, both the attorney and the objecting creditor have asked for review of the Referee's order. While the attorney is not entitled to the fees he would charge a private litigant, the compensation must not be set so low as to preclude the more respected members of the bar from acting as bankruptcy officers.

■ There is little or nothing in the record from which to judge the activity of the attorney, who insists that the Referee was not aware of his professional services. Food Fair to the contrary argues that all of his services were spent in contesting adjudication which of course are not compensable, in our opinion. It contends that other services performed were merely formal in nature and did not contribute substantially to the benefit of the estate.

We reject this conclusion for a number of reasons. Considering the size and complexity of the estate and having concluded that the award of the Referee to the Receiver was clearly justified, it is obvious that what he accomplished could not have been done without the assistance of able counsel. As a matter of fact, the award appears to us to be almost a minimum amount under the circumstances. Furthermore, having in mind the vast experience and ability of the late Referee Wolfe in matters of this kind, it is impossible to conclude that there was any abuse of discretion, and needless to say he was well aware of the advice and activities of Receiver's counsel.

### ORDER

AND NOW, this 21st day of July, 1966, it is ordered that the order of the Referee awarding $18,000 to R. Winfield Baile be affirmed; it is further ordered that the order awarding $5,000 to I. B. Sinclair be affirmed.