**In re ACME HEATING & AIR CONDITIONING SUPPLY, INC., Debtor.**

**Bankruptcy No. 8000576.**

United States Bankruptcy Court,
D. Rhode Island.

May 18, 1982.

Vincent Pallozzi, Pallozzi, Varone, Attilli & Paolino, North Providence, R. I., receiver.

Allan M. Shine, Winograd, Shine & Zacks, P.C., Providence, R. I., for trustee.

Thomas H. Quinn, Jr., Quinn & Shechtman, Providence, R. I., trustee.

Gerrard F. Kelley, Boston, Mass., U.S. Trustee.

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on Vincent Pallozzi's Motion for Reconsideration of the order awarding him $4,000 for services rendered as State Court Receiver.

Mr. Pallozzi was appointed Temporary Receiver of the Debtor's assets on July 1, 1980, and was appointed Permanent Receiver on July 22, 1980 by a justice of the Rhode Island Superior Court. On August 5, 1980, an involuntary petition was filed in this Court, and the order for relief was entered on September 2, 1980. Attorney Pallozzi subsequently turned over the assets in his

possession to the Trustee in bankruptcy,[1] and filed the instant application for compensation requesting a fee of $8,025.

This application was first scheduled for hearing on May 21, 1981, and at that time the Applicant was present, but neither the Trustee, his counsel, nor the United States Trustee appeared. The Court expressed the need for input by the United States Trustee and the Trustee or his counsel, with respect to the reasonableness of the fee requested. Upon being so advised, the Trustee and his counsel requested that an additional hearing be scheduled in order to permit inquiry into the reasonableness of the application. At the second hearing on June 4, 1981, counsel for the Trustee appeared and represented that in his opinion the request was reasonable. The United States Trustee did not appear. When specifically requested by the Court to take a position on the application in question, the United States Trustee asked for yet another hearing. Since Mr. Pallozzi did not object, a third hearing was scheduled for June 30, 1981 at which time the United States Trustee finally appeared, but only to object to an alleged lack of detail in the application, and requested that the Applicant furnish certain additional information. At that hearing; the United States Trustee did not take advantage of the opportunity to examine Pallozzi, and could not explain why the request for additional information was not made in advance of the hearing. Understandably, Pallozzi declined to agree to provide further documentation, and rested on his application as filed.

After consideration, the Court entered an order on August 31, 1981, awarding $4,000,

whereupon the Applicant filed the instant motion to reconsider. The United States Trustee filed still another objection, again based on lack of detail. The United States Trustee failed to appear again at the September 23 hearing on his objection to that motion. Since its inception, the office of the United States Trustee has been of little assistance to this Court in providing meaningful input with respect to the reasonableness of fee applications. (Common responses are "no objection", or a request for more detail, followed by "no objection", or "no position.") This case is no exception, but we also have the added problem that repeated hearings were scheduled, which turned out to be a total waste of time, and which were actually counterproductive.[2] Accordingly, the application will be reconsidered without the requested advice or input of the United States Trustee.

The work performed by Mr. Pallozzi as State Court Receiver is similar to that routinely performed by Chapter 7 trustees in bankruptcy at the very outset of their appointment, and the services for which he presently seeks compensation constitute but a fraction of the work subsequently performed by the Bankruptcy Trustee in this case over a period of 18 months, to date. Section 326(a) of the Bankruptcy Code,[3] which fixes compensation for bankruptcy trustees, entitles the Trustee in this case, as it now stands, to a maximum statutory fee of $3,997.14.[4] This, of course, is subject to reduction if in the Court's judgment the services performed do not warrant payment of the maximum allowable fee. Recognizing that the services in question are not

---

1. $73,392.31 was turned over to the Trustee.

2. *See infra* p. 131, ¶ 2, where the award would have been reduced, but for the additional time spent by Mr. Pallozzi appearing at hearings requested by the United States Trustee.

3. § 326. Limitation on compensation of trustee.
    (a) In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed fifteen percent on the first $1,000 or less, six

percent on any amount in excess of $1,000 but not in excess of $3,000, three percent on any amount in excess of $3,000 but not in excess of $20,000, two percent on any amount in excess of $20,000 but not in excess of $50,000, and one percent on any amount in excess of $50,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

4. The Trustee's interim accounting indicates that $311,714 has been collected to date.

subject to the § 326 limitations,[5] it still seems reasonable that compensation for the same or similar services should bear some relationship to one another, regardless of the forum in which each is performed.

 In arriving at what I consider to be the reasonable value of the services in question, the following standard considerations have been taken into account: (1) time and labor required; (2) novelty and difficulty of questions presented; (3) skill required to perform said services; (4) preclusion of other employment by counsel due to acceptance of the case; (5) customary fees in the community; (6) whether the fee is fixed or contingent; (7) time limitation imposed by client or circumstances; (8) amount involved and result obtained; (9) experience, reputation and ability of the attorney; (10) undesirability of the case; (11) nature and length of professional relationship with the client; (12) awards in similar cases. *King v. Greenblatt*, 560 F.2d 1024, 1026–1027 (1st Cir. 1977); *In re St. Pierre*, 4 B.R. 184, 6 BCD 607 (Bkrtcy.D.R.I.1980), remanded March 5, 1981 (D.R.I.), modified on rehearing May 28, 1981 (Bankr.D.R.I.).

Mr. Pallozzi served as Receiver from July 1, 1980 to August 15, 1980 (46 days). He apparently spent much of that time trying to organize the Debtor's affairs, and dealing with various creditors regarding claims of ownership of certain assets in his possession. Mr. Pallozzi turned over a total of $73,392.31 to the Trustee, but of that amount, $50,059.56 was "cash on hand" received by him at the time of his appointment. Only $20,427.89 was actually collected during the receivership, and this was accomplished by opening the mail each morning and depositing these funds into the Receiver's account. It does not appear that any of the services performed by the Applicant were unusual or complex. To the contrary, they were routine and ministerial. There was no litigation.

Based upon the information before the Court, (Mr. Pallozzi offered nothing new at the hearing on the Motion for Reconsideration) as well as the several reviews of the application in question, the maximum value of the services performed by Mr. Pallozzi is still $4,000. In fact, upon careful reconsideration, the Court would probably be inclined to reduce its original award, but will leave that allowance undisturbed only because of the additional time required to be expended by Mr. Pallozzi in attending the several unproductive hearings occasioned by the United States Trustee, as described above.

The order entered on August 31, 1981 shall remain in effect.

---

5. Section 543(c)(2) of the Bankruptcy Code only states that the Court shall "provide for the payment of reasonable compensation for services rendered and costs and expenses incurred..." by state court receivers after notice and hearing.