**In re LAKE REGION OPERATING CORP., Debtor.**

**Bankruptcy No. 5–92–01149.**

United States Bankruptcy Court, M.D. Pennsylvania, Wilkes–Barre Division.

Aug. 5, 1999.

Lisa M. Doran, Wilkes–Barre, PA, for Scott Bennett, receiver.

Joseph G. Murray, Wilkes–Barre, PA, for George P. Irish and Diane Stought, objectors.

Francis Hoegen, Wilkes–Barre, PA, for Robert Sheils, trustee.

Robert Sheils, Scranton, PA, Ch. 7 Trustee.

## *OPINION*

JOHN J. THOMAS, Bankruptcy Judge.

Lake Region Operating Corporation (LROC) was placed into involuntary dissolution pursuant to provisions of the Business Corporation Law as enacted in Pennsylvania. 15 Pa.C.S.A. § 1981 et seq. On December 9, 1991, by Order of Judge Robert J. Conway of the Court of Common Pleas of Wayne County, Attorney Scott B. Bennett was appointed State Court Receiver of Lake Region Operating Corpora-

tion pursuant to 15 Pa.C.S.A. § 1985. The Order of appointment authorized Bennett to receive $75.00 per hour for his services.

Bennett operated the business, an Arby's fast food restaurant franchise, until its liquidation on March 26, 1992. (Transcript of March 21, 1996 at 24 and Transcript of August 5, 1996 at 157.) Thereafter, the bankruptcy case was commenced by an involuntary petition filed June 24, 1992. After a series of hearings on the matter, LROC was adjudicated a Debtor under chapter seven by Opinion and Order issued July 14, 1994, over the strenuous objection of Mr. Bennett. Bennett now seeks approval of his Final Report under Federal Rules of Bankruptcy Procedure 6002(a) and an allowance of compensation for services rendered pursuant to his appointment in the amount of $17,243.95. Four Thousand Seven Hundred Ninety–Two and ⁵⁰⁄₁₀₀ Dollars ($4,792.50) has heretofore been allowed by the state court. (Docs. # 112 and 122.) Bennett has also requested that expenses incurred to certain professionals for accounting and legal services during the receivership be approved. (Doc. # 123.) George Irish has filed an Objection to the Application to approve compensation. (Doc. # 129.) Peter Cavalier has filed an Objection to the fee application, (Doc. # 127), and also the Receiver's Final Report. (Doc. # 115.)

At the outset, I observe that an attorney or an accountant working for a receiver is entitled to an administrative award based on the "time, the nature, the extent, and the value of such services and the cost of comparable services" pursuant to 11 U.S.C. § 503(b)(4). Because little detail was presented in conjunction with the Application to compensate these professionals, I denied Mr. Bennett's request without prejudice to the refiling of a more detailed

document. (Transcript of March 21, 1996 at 134 and 164.)

 It has long been the policy of the courts to utilize the funds of the estate to pay a superceded custodian. *Randolph v. Scruggs,* 190 U.S. 533, 23 S.Ct. 710, 47 L.Ed. 1165 (1903). In fact, specific provisions allowing compensation to a superceded receiver provide *that* extraordinary circumstance where a prepetition expense enjoys administrative status. *In re Snergy Properties, Inc.* 130 B.R. 700, 704 (Bankr.S.D.N.Y.1991). This is so because the court views the superceded receiver as being entitled to "deduct" the expenses of the receivership from the property surrendered to the bankruptcy court. 3A James William Moore, Collier on Bankruptcy ¶ 62.32 at 1617–18 (14th ed.1975). Presently, the compensation of a custodian superceded by a bankruptcy is provided for under two sections of the Bankruptcy Code, 11 U.S.C. §§ 503(B)(3)(E) and 543(c)(2). Section 503(B)(3)(E) authorizes an allowance for services prior to being superceded, while § 543(c)(2) provides for post-petition services rendered and expenses attendant to turnover and accounting to the bankruptcy trustee.

11 U.S.C. § 503(b)(3)(E) reads:

After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—... a custodian superseded under section 543 of this title, and compensation for the services of such custodian.

 At least one court has concluded that legislative history explains that the provisions of this section should be confined to pre-petition services. *In re 245 Associates, LLC,* 188 B.R. 743, 748 (Bankr. S.D.N.Y.1995). Legislative history does, indeed suggest such a conclusion.[1]

1. "Section 503(b)(3)(E) codifies present law in cases such as *Randolph v. Scruggs,* 190 U.S. 533, 23 S.Ct. 710, 47 L.Ed. 1165, which accords administrative expense status to services rendered by a prepetition custodian or other party to the extent such services actual-

ly benefit the estate." A & P 124 Cong. Record H11047, H11095 (daily ed. Sept. 28, 1978) (Remarks of Sen. DeConcini). To the same effect see remarks of Sen. DeConcini. 124 Cong. Record S17411 (daily ed. Oct. 6, 1978).

■■■ While no standards have been set for awarding compensation to a custodian under § 503(b)(3)(E), much of the case law that both predates and postdates that section, suggest that I look at various factors such as time, complexity of issues, estate size, and results. *In re Acme Heating & Air Conditioning Supply, Inc.*, 20 B.R. 129, 131 (Bankr.D.R.I.1982); *In re Garrett Road Corporation*, 256 F.Supp. 709, 713 (E.D.Pa.1966). Nevertheless, an overarching consideration is whether the specific services benefitted the estate. *In the Matter of North Port Development Company*, 36 B.R. 19, 21 (Bankr.E.D.Mo. 1983). In this vein, it has been established that efforts expended in resisting the bankruptcy cannot be compensated by the bankruptcy estate. *Randolph v. Scruggs*, 190 U.S. 533, 23 S.Ct. 710, 47 L.Ed. 1165 (1903); *In re Stewart*, 179 F. 222 (6th Cir.1910); *In re Garrett Road Corporation*, 256 F.Supp. 709, 713 (E.D.Pa.1966); *In re Posadas Assocs.*, 127 B.R. 278, 281 (Bankr.D.N.M.1991). See also 4 James M. Henderson, *Remington on Bankruptcy* § 1786 at 588 (1957). Since efforts expended in fighting the involuntary petition cannot be said to benefit the creditors, the risk of not prevailing must be on the receiver. *In re Kenval Marketing Corp.*, 84 B.R. 32, 36 (Bankr.E.D.Pa.1988).

Upon being appointed as receiver in the state court, Mr. Bennett was confronted with basically a two party dispute between the owners of LROC, George Irish and Peter Cavalier. Overcoming significant difficulty, Bennett arranged to liquidate the estate assets. The closing took place on March 25, 1992 at the gross sales price of $1,709,059.02, netting $383,908.71 for the receivership. (Final Report of Scott B. Bennett, State Court Receiver, Pursuant to Bankruptcy Rule 6002, Exhibit F (Doc. # 112).) From these net proceeds the receiver paid some expenses including pre-receivership tax claims of approximately $247,000. It was during the process of determining the methodology of the remaining distribution that the involuntary was filed. At that point, Bennett was relieved of any further authority and responsibility to deal with the property except to preserve and deliver it to the bankruptcy representative. 11 U.S.C. § 543(a) and (b), *In re 245 Associates, LLC*, 188 B.R. 743 at 747–748 (Bankr.S.D.N.Y.1995). Ultimately, $114,406.22 was delivered to the bankruptcy trustee.

The Supreme Court, when referring to an assignee for the benefit of creditors, indicated that such individual "holds assets as 'a mere naked bailee for the creditors [and] has no right to retain the possession as against the trustee in bankruptcy.'" *Phelps v. United States*, 421 U.S. 330, 337, 95 S.Ct. 1728, 1733, 44 L.Ed.2d 201 (1975), citing *In re McCrum*, 214 F. 207, 209 (C.A.2 1914).

Despite vigorous criticism from the objector and corporate owner, George Irish, I find Bennett's administration to be generally reasonable and well-intentioned. With two major exceptions, Bennett performed admirably in his role as state court receiver, operating the business until its ultimate liquidation. One specific error involved his failure to pay an outstanding real estate tax at closing, which has, to date, resulted in no loss to the estate by reason of title insurance purchased by the buyer. (Transcript of August 6, 1996 at 42–43.) Nevertheless, it is conceivable that Ambassador Abstract Company, the title insurance company involved, could make claim against the estate for the property taxes it paid on LROC's behalf. The amount of the tax was $5,166.80. (Transcript of August 7, 1996 at 87.)

The second major shortcoming was Mr. Bennett's failure to secure a bond as required under state law. This was discussed in an earlier Opinion of this Court which concluded that such failure would not prevent Bennett from being compensated for his services but supported a reduction in award. *In re Lake Region Operating Corp.* 209 B.R. 637, 638 (Bankr. M.D.Pa.1997).

Referring specifically to the time records submitted pursuant to Bennett's fee application, I conclude that efforts expended opposing the involuntary petition, i.e., from June 24, 1992 to July 14, 1994, must be disallowed inasmuch as that effort did not benefit the estate. I calculate the time spent during that period as 132.9 hours at $75.00 per hour or $9,967.50.

I will allow all prepetition time and expenses. Bennett identifies this portion of his request as represented by 71 hours at $75.00 per hour or $5,325.00 together with $29.66 in expenses. Moreover, I will authorize the reimbursement of expenses incurred for legal advertising ($269.75), since such expense was incurred prepetition.

With regard to post-adjudication time and expenses, I find that all items enumerated by Mr. Bennett are within the parameters of 11 U.S.C. § 543(c)(2) and are reasonable in nature. I will authorize payment for the entire request of $1,387.50 together with expenses of $9.00.

Because Mr. Bennett's failure to secure a bond was violative of Judge Conway's Order requiring a bond, clearly the result of Bennett's negligence, and jeopardized the corpus of the estate, this Court cannot disregard such nonfeasance. As numerous cases have demonstrated, the bonding of a fiduciary is an essential element of an estate administration geared to securing the confidence of both court and beneficiaries. I will reduce the fees that I would otherwise allow Bennett by 10% or $671.25, in recognition of the needless exposure to the estate by such dereliction.

For these reasons, I allow Scott Bennett the sum of $6,041.25 ($5,325 + $1387.50 − $671.25) for his services as custodian and $308.41 in reimbursement of his expenses.[2] I will require the bankruptcy trustee to postpone distribution of this award so as to address the title company's

potential claim against the estate. If the title company has not been notified of a bar date in this estate, then the trustee is directed to holdback the payment of this administrative claim until such time that potential claim is either barred or otherwise resolved. The receiver's award should be reduced by whatever additional expense incurred by the bankruptcy estate in addressing this title company's claim.

An Order will follow.

---

2. The Court recognizes that this award must be reduced by such sums as have been, heretofore, received by Mr. Bennett during his receivership as a "partial payment" towards his ultimate allowance.