**In re KENVAL MARKETING CORPORATION, Debtor.**

**Bankruptcy No. 83–02723F.**

United States Bankruptcy Court,
E.D. Pennsylvania.

March 15, 1988.

Jay G. Ochroch, Fox, Rothschild, O'Brien Frankel, Philadelphia, Pa., for Assignee for the Benefit of Creditors.

Bonnie Glantz Fatell, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for objector/trustee, Fred Zimmerman.

Adelman, Lavine, Gold & Levin, Philadelphia, Pa., for debtor.

Leonard Cook, Dilworth, Paxson, Kalish & Kaufman, Philadelphia, Pa., for Creditors' Committee.

### MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

After a tortuous procedural history (set out in an unpublished memorandum dated April 22, 1987), the merits of an application filed by the law firm of Fox, Rothschild, O'Brien and Frankel are now before me. In this application, Fox, Rothschild seeks the allowance of professional fees of $17,-107.50 and the reimbursement of costs totaling $1,130.81 in connection with services rendered to the assignee for the benefit of creditors who was appointed, prepetition, under state law. These fees and costs are related to *postpetition* services rendered to the assignee. Fox, Rothschild has already received $10,000.00 in compensation for its prepetition services rendered. In response to this application, the trustee in this chapter 11 bankruptcy case has filed an objection. The trustee argues that there is no statutory entitlement for the payment of, (virtually), all of the services and costs incurred by Fox, Rothschild postpetition.

As with most disputes, understanding the background surrounding the filing of this bankruptcy petition is useful if one is to appreciate the parties' respective positions.

On or about March 8, 1983, the debtor, Kenval Marketing Corp., executed an assignment for the benefit of creditors in

Pennsylvania. On July 7, 1983, an involuntary petition under chapter 7 of the Bankruptcy Code was filed against the debtor. An order for relief was entered on April 12, 1984. On July 2, 1984, this bankruptcy case was converted from chapter 7 to chapter 11 and a trustee was appointed by the court on October 14, 1984.

The involuntary petition was filed by three creditors who were owed 75% of the total amount of the claims against the debtor. These three creditors had received substantial payments from the debtor, totaling approximately $347,000.00, during the four month period prior to the assignment. Moreover, the debtor had made transfers of $275,000.00 to its president and his family as well as satisfied a $735,000.00 loan that was guaranteed by the debtor's president more than four months prior to the assignment but not more than one year prior to the filing of the involuntary petition. *See In re Kenval Marketing*, 38 B.R. 241, 242 (Bankr.E.D.Pa.1984).

The assignee, Mr. Waslow, vigorously opposed the involuntary bankruptcy. Prior to the entry of the order for relief, as well as in his motion for reconsideration of the entry of this order, the assignee argued that the bankruptcy case should be dismissed or that this court should abstain pursuant to 11 U.S.C. § 305. The basis of his argument was his position that transfers made to creditors within four months of the assignment could be invalidated only by the assignee pursuant to the Pennsylvania Insolvency Statute, 39 P.S. § 151, but not by a bankruptcy trustee, since those transfers occurred more than ninety days prior to the bankruptcy filing. 11 U.S.C. § 547(b)(4)(A). For a variety of reasons, this court rejected the assignee's arguments, entered the order for relief, and later denied a motion for reconsideration. *In re Kenval Marketing Corp.*, 38 B.R. 241, 40 B.R. 445 (Bankr.E.D.Pa.1984). Thereafter, the trustee filed twenty-eight adversary proceedings seeking to invalidate the preassignment transfers to non-insiders pursuant to 11 U.S.C. § 544(b) and 39 P.S. § 151. The right of the trustee to succeed to the powers of the assignee under the Pennsylvania Insolvency Act, by virtue of § 544(b), was upheld by this court in ruling on a motion to dismiss filed by one of the creditors. *In re Kenval Marketing Corp.*, 69 B.R. 922 (Bankr.E.D.Pa. 1987). This decision enabled the trustee to resolve all the adversary disputes upon terms acceptable to the trustee and to all creditors and parties in interest.

■ At bottom, the arguments of the trustee and counsel for the assignee in this dispute may be summarized as follows: The trustee maintains that counsel to the assignee may only be compensated for services rendered to the assignee which benefited the debtor's estate; the assignee's counsel contends that where actions are taken to oppose an involuntary bankruptcy in the good faith belief that the bankruptcy filing will harm creditors, such actions are compensable even if the assignee's belief is mistaken. After reviewing the various code provisions and their origins, I conclude that the trustee's position has greater support.

■ Although counsel's application seeks compensation under 11 U.S.C. § 331, this code provision is inapplicable to the matter at bench. Counsel to the assignee never sought appointment from this court, nor was its appointment approved. Therefore, Fox, Rothschild is not a professional "person", (*see* 11 U.S.C. § 101(35)), employed pursuant to 11 U.S.C. § 327. Recognizing this problem, Fox, Rothschild now asserts that it is entitled to compensation by virtue of 11 U.S.C. § 503(b)(3)(E), and (b)(4). These provisions state:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

\*    \*    \*    \*    \*    \*

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

\*    \*    \*    \*    \*    \*

(E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian;

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

If counsel is entitled to compensation by virtue of § 503(b)(4), then prior court approval was not required. *In re Washington Lane Associates,* 79 B.R. 241 (Bankr.E. D.Pa.1987).

The possibility that an assignee for the benefit of creditors might have existed prepetition is recognized by the Bankruptcy Code in a number of provisions. For example, 11 U.S.C. § 303(h)(2), makes the appointment of an assignee [1] grounds for the filing of an involuntary petition by the requisite number of creditors. 11 U.S.C. § 543 requires an assignee to turn over all of the debtor's assets to a debtor in possession or trustee and to file an accounting. *See Matter of North Port Development Co.,* 36 B.R. 19 (Bankr.E.D.Mo.1983). The assignee is forbidden to distribute any of the debtor's property, or to continue to administer the debtor's property, except for those actions which are needed to preserve such property. 11 U.S.C. § 543(a). *See Matter of North Port Development Co.*

The Bankruptcy Code further states that the court "shall—provide for the payment of reasonable compensation for services rendered and costs and expenses incurred by 'the assignee' ",[2] 11 U.S.C. § 543(c)(2), and such costs and expenses, including counsel fees shall become a first priority expense of the debtor's estate. 11 U.S.C. §§ 503(b)(3)(E), (b)(4), 507(a)(1). *See In re Hearth & Hinge, Inc.,* 28 B.R. 595, 597 (Bankr.S.D.Ohio 1983).

The legislative history clearly reflects a congressional intent not to compensate an assignee for *all* actions taken by him. "Section 503(b)(3)(E) codifies present law in cases such as *Randolph [& Randolph ] v. Scruggs,* 190 U.S. 533, [23 S.Ct. 710, 47 L.Ed. 1165] [1903] which accords administrative expense status to services rendered by a prepetition custodian or other party to the extent such services actually benefit the estate." 124 Cong.Rec. H 11094–95 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards); S 17411 (daily ed., Oct. 6, 1978) (remarks of Sen. DeConcini). The Supreme Court decision in *Randolph* ended a dispute over the propriety of awarding an administrative expense claim to an assignee or his counsel in a superseding bankruptcy case. *In re Jensen–Farley Pictures, Inc.,* 47 B.R. 557, 570 (Bankr.D. Utah, 1985); 3A *Collier on Bankruptcy,* ¶ 62.32, at 1618 (14th ed. 1975). After *Randolph,* which involved a request of assignee's counsel for compensation for services rendered, assignees may "receive such prepetition expenses [including counsel fees] as were reasonably incurred in the care and preservation of assets, which inured to the benefit of the bankruptcy estate." *In re Jensen–Farley Pictures, Inc.,* 47 B.R. at 570. As *Collier* notes,

The doctrine of *Randolph v. Scruggs* may be summarized as the benefit doctrine. It deals with allowances applied for, by the assignee's counsel, in bankruptcy proceedings superseding the assignment within the four-month period and is important in three respects. (1) Services are compensable as far as they "tend to the preservation or benefit of the estate," which excludes any allowance for legal assistance rendered in resisting adjudication and relegates to the status of a general claim the fees for preparing the deed of assignment. (2) Reimbursement is due not as a provable claim, or even as costs of administration,

---

**1.** 11 U.S.C. § 101(10)(B) defines "custodian" to include an "assignee under a general assignment for the benefit of a debtor's creditors...."

**2.** The compensation and costs envisioned in this subsection are restricted to that required for the

assignee to fulfill his responsibilities under section 543. *See In re Marichal-Agosto, Inc.,* 12 B.R. 891 (Bankr.S.D.N.Y.1981). Counsel for the assignee is not proceeding under section 543(c) here.

but on the theory that the assignee would be entitled to deduct his allowable expenses from the property that he is required to surrender to the bankruptcy court. (3) Unless the point is specifically raised, there is no objection to counsel for the assignee applying directly to the bankruptcy court, instead of an application by the assignee for reimbursement of his counsel fees. The basic reasoning of the decision is that a general assignment, while it may occasionally be in fact a fraud and should then be treated accordingly, does not in itself constitute a fraud, constructive or otherwise.

3A *Collier on Bankruptcy* ¶ 62.32, 1617–18 (14th ed. 1975).

Certain language of the Supreme Court in *Randolph* is worth noting as it is applicable to this particular dispute. First, the Court held:

We are not prepared to go further than to allow compensation for services which were beneficial to the estate. *Beyond that point we must throw the risk of his conduct on the assignee, as he was chargeable with knowledge of what might happen.*

*Randolph v. Scruggs*, 190 U.S. at 539, 23 S.Ct. at 713 (emphasis added).

The Court later dismissed the possibility that opposition to an involuntary petition might be beneficial to the estate:

No ground appears for allowing the item for services in resisting an adjudication of bankruptcy.

*Id.*, at 539, 23 S.Ct. at 713.

Based upon the language of the statute, its legislative history, and the *Randolph* decision, compensation for counsel to the assignee is limited to reasonable fees for services provided which benefited the estate. *See In re Marichal–Agosto, Inc.*, 12 B.R. 891 (Bankr.S.D.N.Y.1981). Furthermore, the actions of an assignee are limited to preservation, turnover, and accounting once he obtains knowledge of the bankruptcy filing unless permitted to continue by a bankruptcy court pursuant to 11 U.S.C. § 543(d)(1) or abstention is warranted under 11 U.S.C. § 305. *See Matter of North Port Development Co.;* Levin, *An Intro-*

*duction to the Trustee's Avoiding Powers,* 53 Am.Bankr.L.J. 173, 195–97 (Spring, 1979).

■ In reviewing the fee application *sub judice,* I note that most of the time spent by Fox, Rothschild concerns its postpetition representation of the assignee in opposing the involuntary petition. Additional time was spent by counsel in reviewing the debtor's books and records and in attempting to have the former assignee appointed as bankruptcy trustee. None of these services provided any benefit to the debtor's estate. None preserved assets or garnered new assets. In fact, these actions served to increase the cost of administering the estate and thus have decreased the size of the fund available to creditors. As such, these services cannot be compensated under 11 U.S.C. § 503(b)(3)(E), (b)(4). *Randolph v. Scruggs; Matter of North Port Development Co.*

It makes no difference that counsel for the assignee undertook some of these activities in the belief that creditors would be better served if the involuntary bankruptcy petition were dismissed. Both 11 U.S.C. §§ 305 and 543(d)(1) give the court authority to leave the assignee in place. The risk of not prevailing under these theories must be borne by the assignee or his counsel. *Randolph v. Scruggs.* Indeed, were motivation at issue, the Supreme Court would have held that all "good faith" prepetition services performed by the assignee were entitled to compensation; instead, it limited compensation only to those services which provided a demonstrable benefit. *See In re Jensen–Farley Pictures, Inc.* To conclude otherwise could enable assignees to hamper the bankruptcy trustee's succession to control of the debtor's estate on the basis of their subjective intent. Both the Supreme Court and Congress feared that dual lawyers of administrative expenses would prove too costly for creditors; therefore, the first layer is limited, not by intent but by result. As I am constrained to follow this policy decision, most of the fee application must be denied.

Upon review, the application, which involves only postpetition services will be allowed insofar as it concerns services pro-

vided pursuant to 11 U.S.C. § 543(b)(1), and (2) (turnover and accounting). The following time entries will be allowed:

Jay G. Ochroch at $160.00 per hour

| | |
|---|---|
| 6/21/84 | .2 |
| 12/6/84 | .2 |
| 12/12/84 | .3 |
| 2/27/85 | .2 |

James J. Gillespie, Jr. at $65.00 per hour

| | |
|---|---|
| 2/28/85 | .3 |
| 3/5/85 | .2 |
| 5/31/85 | .3 |
| 5/31/85 | .2 |

Thus, an allowance of $209.00 will be made for postpetition services rendered. (Counsel has previously received $10,000.00 for prepetition services.) In all other respects, the application will be denied.

An appropriate order will be entered.