### In re AMERICAN MOTOR CLUB, INC., Debtor.

### Bankruptcy No. 887–70763–260.

United States Bankruptcy Court, E.D. New York.

March 26, 1991.

See also 119 B.R. 394.

Philip Irwin Aaron, Syosset, N.Y. by Michael D. Brofman, for the Official Creditors' Committee.

Rosner & Goodman, New York City by Andrew J. Goodman, for Nicholas Neu.

Dreyer & Traub, New York City by Edward M. Tillinghast, III, for Winfield Sec. Corp.

### DECISION

CONRAD B. DUBERSTEIN, Chief Judge.

Winfield Security Corporation ("Winfield") moves pursuant to Title 11 of the United States Code (the "Code") Section 503(b)(3)(E) for an order declaring that it's claim of $44,093.20 be allowed as an administrative expense of the estate under § 503(b)(3)(E) of the Bankruptcy Code.[1]

---

1. Section 503(b)(3)(E) provides in pertinent part: After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including.... the actual, necessary expenses ... incurred by.... a custodian superseded under section 543 of this title, and compensation for the services of such custodian.

An objection to the motion was interposed by the Official Committee of Unsecured Creditors (the "Committee") and also by Nicholas Neu, a former director of American Motor Club ("AMC" or the "Debtor"). For the reason set forth below the motion is denied.

### FACTS

AMC was in the business of selling automobile pre-paid collision service contracts to New York residents and maintained places of operations at: 133–25 37th Avenue, Flushing, New York; 32–27 Downing Street, Flushing New York; and, 19–11 38th Street, Astoria New York.

On or about October 18, 1985, an action was commenced against AMC by the State of New York (the "State") in the Supreme Court of the State of New York, New York County (the "State Court") on the grounds that the Debtor's business constituted an illegal and unlicensed collision and comprehensive insurance business. By a decision of the State Court dated January 14, 1987, it was determined that AMC's sale of automobile pre-paid collision service contracts was indeed an illegal insurance business. By order and judgment, dated April 8, 1987, AMC was permanently enjoined from engaging in the business of repairing or compensating consumers for motor vehicles damaged as a result of accident or theft, and was assessed a penalty of $5,001,000 for its violation of New York State Insurance Law.

During the course of the State Court action, the State moved to restrain AMC from disposing of its assets and for the appointment of a temporary receiver, with all powers to function for and as AMC. The State's relief was granted by order dated March 16, 1987, and James W. Randolph ("Randolph"), in his official capacity as Deputy Superintendent of Insurance for the State of New York, was appointed as temporary receiver.

Randolph hired Winfield to provide guard and security services to AMC at its three locations. Shortly thereafter, Randolph requested that he be removed from his position as temporary receiver because it interfered with his duties at the New York State Insurance Department. By order of the State Court, entered on March 30, 1987 Randolph's relief was granted, he was removed as temporary receiver and Maria Alaznaki, Esq. was appointed as temporary receiver in his place.

AMC initiated this bankruptcy case by filing a petition for relief under Chapter 11 of the Code on May 19, 1987.

In the Objection to Winfield's Motion interposed by the Committee, it is stated "there was no custodian actually in place just prior to the filing of the petition in bankruptcy." This Court is unaware of any State Court order removing Ms. Alaznaki. Nonetheless, as this Court has not been presented with any motions to remove Ms. Alaznaki, compel her to render an accounting or turn over property of the estate, it is only logical to assume that the statement of the Committee is correct and that the receivership came to an end sometime prior to the commencement of this case.

Prior thereto and on April 10, 1987, an order was entered by the State Court directing Philip Plaksin, as president of AMC to: (1) continue to pay Winfield; (2) unlock AMC's facilities for the purpose of allowing consumers to recover their automobiles; and (3) to take all steps necessary to enable AMC to write court authorized checks on corporate accounts. It is to be noted that this order of April 10 directed Plaksin to pay Winfield, as opposed to requiring Randolph or Ms. Alaznaki to satisfy the debt as part of the receivership proceedings.

Plaksin had also been authorized, by a separate order of the State Court, dated April 10, 1987, to retain P.B.R. Group to provide services enabling AMC to release to their rightful owners the automobiles it had in its possession. P.B.R. Group inventoried and moved all consumer vehicles, personal property, and trade fixtures in which AMC had any interest from the Debtor's premises at 32–27 Downing Street, and 19–11 38th Street to its 37th Avenue, Flushing location, thus obviating the need for Winfield's services at those

two sites. Plaksin also chose to replace Winfield and use another security company to provide services at AMC's 37th Avenue location. By stipulation and order of the State Court dated and filed May 8, 1987, AMC was authorized to terminate Winfield's services at 32–27 Downing Street and 19–11 38th Street immediately and terminate its services at 133–25 37th Avenue as of May 11, 1987.

On May 19, 1987, by stipulation and order of the State Court, the AMC and Winfield acknowledged that there existed an outstanding balance of $44,093.20 due to Winfield for services rendered for the period April 19, 1987 through May 11, 1987 and authorized and directed Plaksin, as president of AMC to write three checks to Winfield in the amounts of $5,811.00, $5,512.00 and $32,770.20 in full satisfaction of Winfield's claim. Later that same day the Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code.

The Debtor failed to comply with the order of May 19 in that it did not pay Winfield. However, in June of 1987, the Debtor made an application to Hon. C. Albert Parente, the Bankruptcy Judge then assigned to this case, for an order pursuant to § 105 of the Bankruptcy Code authorizing it to pay Winfield $44,093.20 upon confirmation of a plan of reorganization in its Chapter 11 case, or in the event this case were converted to a Chapter 7 case by the trustee only after all administrative expenses had been satisfied in full. The docket sheet entry for July 2, 1987 states that this motion was denied and directed an order be settled. However no such order was ever signed.

On February 11, 1988 this case was reassigned to me due to the retirement of Judge Parente.

Now before the court is Winfield's Application for Allowance and Payment of Administrative Expense. Winfield argues that its within application differs from the Debtor's motion of June 1987 in that it requests that its claim be paid upon confirmation of a plan or by a trustee in a Chapter 7 case, whereas the Debtor's motion asked that Winfield's claim not be paid until all administrative claims were paid in full.

## DISCUSSION

Winfield argues that it's claim is entitled to treatment as an administrative expense pursuant to § 503(b)(3)(E) of the Bankruptcy Code on the grounds that its claim arises out of actual, necessary expenses incurred by the receiver.

Winfield maintains that inasmuch as it was hired by a receiver appointed by the State Court and performed services which enhanced the preservation of the estate, its claim represents an actual, necessary claim incurred by a custodian, hence its claim qualifies for an administrative expense under § 503(b)(3)(E). Winfield also argues it is entitled to an administrative priority because the State Supreme Court directed AMC to pay Winfield.

The Committee objects to the treatment of Winfield's claim as an administration claim for several reasons. First the Committee contends that an application for this relief has already been made and denied, hence the application must be denied as moot. Second, both objectants argue that § 503(b)(3)(E) only authorizes the actual and necessary expenses of a custodian *superseded* under § 543, and that in the instant case, there is no evidence that a custodian was in place just prior to the filing of the petition for relief and therefore the receiver was not superseded by the initiation of this bankruptcy case. Third, the Committee points out that although Winfield had been hired by Randolph, Winfield requested payment directly from AMC, not from the receiver, and that the Stipulation dated May 19, 1987, signed by Plaksin, as president of AMC, and the Attorney General authorizes the Debtor and not the receiver to make payment to Winfield. Hence Winfield is neither a custodian nor a beneficiary of a custodian and is not entitled to any priority.

"Section 503(b)(3)(E) codifies present law in cases such as *Randolph v. Scruggs*, 190 U.S. 533, 23 S.Ct. 710, 47 L.Ed. 1165 [(1903)] which accords administrative expense status to services rendered by a pre-

petition custodian or other party to the extent such services actually benefit the estate." 124 Cong.Rec. H 11094–95 (daily ed., Sept. 28, 1978) (remarks of Rep. Edwards); S 17411 (daily ed., Oct. 6, 1978) (remarks of Sen. DeConcini). *See In re Kenval Marketing Corp.*, 84 B.R. 32, 34 (Bankr.E.D.Pa.1988); *In re Valley Isle Broadcasting, Ltd.*, 56 B.R. 505, 506 (Bankr.D.Hawaii 1985).

In *Randolph* the Supreme Court stated the principle that costs of a superseded assignment for the benefit of creditors, including attorney's fees for representation of the assignee, were entitled to first payment out of the bankrupt estate as an equitable lien. This equitable lien would be imposed provided that the costs were beneficial and tended to preserve the assets. The Court reasoned that reimbursement and/or allowances were due not as costs of administration or provable claims, but based on the theory that the assignee was entitled to deduct the expenses before being required to surrender the balance of the assets to the bankruptcy court. Thus, if the receiver turned over all the assets, the deductible expenses should be reimbursed to him. *In re Orchid Island Hotels, Inc.*, 18 B.R. 926, 932 (Bankr.D. Hawaii 1982) (footnotes omitted)

*See Fine v. Weinberg*, 384 F.2d 471, 473 (4th Cir.1967); *In re James Butler Grocery Co.*, 100 F.2d 376, 378 (2d Cir.1938); *In re Roth*, 128 F.2d 428, 430 (7th Cir. 1942); *In re White*, 58 F.2d 203, 204 (2d Cir.1932); *In re Garcia Sugars Corp.*, 49 F.Supp. 350 (S.D.N.Y.1943), *aff'd sub nom., Arab Corp. v. Bruce*, 142 F.2d 604 (5th Cir.1944); *In re Kenval Marketing Corp.*, 84 B.R. 32, 34 (Bankr.E.D.Pa.1988); *In re Jensen–Farley Pictures, Inc.*, 47 B.R. 557, 569 (Bankr.D.Utah 1985).

It is well settled that a receiver appointed by a state court may be a custodian for purposes of § 503(b)(3)(E). *See In re Cash Currency Exchange*, 762 F.2d 542 (7th Cir. 1985). It has also been held by at least one court that an entity which provided services to a receiver which were beneficial to the succeeding estate in bankruptcy was entitled to apply directly for payment of its claim as an administrative expense, since the receiver had not paid that entity and had turned over all its assets to the estate. *See In re Cablehouse*, 63 B.R. 685 (Bankr. S.D.Ohio W.D. 1986).

■ It is undisputed that Winfield was hired by AMC's receiver and rendered services which tended to benefit AMC in that it guarded its assets against theft and other dangers prior to the institution of these bankruptcy proceedings, and, like the entity in *Cablehouse, supra*, was not paid by the receiver. Winfield argues that it is entitled to payment as an administrative expense because it was hired by a receiver and its claim represents an actual and necessary expense of the receiver. However Winfield is only entitled to an administrative expense to the extent the receiver would be entitled to such treatment under § 503(b)(3)(E). In this case the receiver would not be entitled to payment as an administration expense since he was not superseded as that term is interpreted by the Bankruptcy Code.

Section 503(b)(3)(E) specifically states that a custodian *superseded* under § 543 is entitled to administrative expenses. Section 543 requires a custodian "appointed before the bankruptcy case to deliver to the trustee and to account for property that has come into his possession, custody or control as a custodian." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 370 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 84–85 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5870, 6326. In this case the custodian, i.e. the receiver, was not superseded under § 543. The receiver was dismissed at some point before the commencement of this case in bankruptcy and therefore was never required to deliver property or make an accounting to the trustee. Since the receiver was not superseded under § 543 he would not have been entitled to have his fees or expenses treated as administrative expenses. Winfield's claim is merely derivative of, and no better than any other claim of the receiver. Therefore Winfield is not entitled to have its claim treated as an administrative expense.

*In re Anglo–American Properties, Inc.,* 460 F.2d 212 (5th Cir.1972), (*"Anglo–American"*) is instructive even though it is a case decided under the "old Bankruptcy Act" inasmuch as § 503(b)(3)(E) is a codification of *Randolph v. Scruggs, supra,* an "Act" case. In *Anglo–American* the bankruptcy estate included certain properties which had once been placed in receivership. The receiver incurred two debts, one for services rendered by its attorney and one owing to a bank which financed the purchase of casualty and liability insurance on the properties which were in receivership. The receivership was terminated in October 1965 when the debtor acquired the properties by merging with the corporation which owned the properties. The attorney's fee was not paid in full by the receiver, rather the attorney accepted a note from the debtor for the balance of his fee. The note signed by the receiver in favor of the bank was also not paid but was assumed by the debtor. The debtor failed to make payment on any of these notes, ran into financial difficulties, and filed a petition for corporate reorganization under Chapter X of the Bankruptcy Act on June 22, 1966. The two creditors relied on *Randolph v. Scruggs, supra,* and similar cases in support of their argument that they were entitled to priority lien status. The Circuit Court for the Fifth Circuit rejected this argument noting: "[i]n each of these cases [cited by the creditors in support of their claims] the institution of bankruptcy proceedings had been preceded by an assignment for the benefit of creditors, and the *assignee was still administering the debtor's estate when the bankruptcy petition was filed."* *Anglo–American,* 460 F.2d at 215 (emphasis added).

There are obvious similarities between *Anglo–American* and the case at bar. In both cases property belonging to the debtor was in receivership and the receiver incurred certain expenses which were not paid by the receiver. Also in both cases the receivership came to an end before the commencement of a case in bankruptcy. Moreover in each case the debtor itself was made primarily responsible for the debt.

■ This court adopts the position taken in *Anglo–American* that a custodian may have its claim paid as an administrative expense only if it was administering the estate when the bankruptcy petition is filed. *See also In re James Butler Grocery Co.,* 100 F.2d 376, 378 (2d Cir.1938) (property returned to debtor after reorganization abandoned not subject to equitable lien or deduction in favor of creditor, whose claim arose during course of reorganization, when property subsequently came into control of bankruptcy court). Therefore, it is the holding of this court that Winfield is not entitled to an administrative expense pursuant to § 503(b)(3)(E) since no receiver was administering the estate when AMC filed its petition for relief.

■ This Court would also deny Winfield's claim for an administration expense pursuant to § 503(b)(3)(E) on the separate ground that it appears that even though Winfield was hired by the receiver, it was never intended that Winfield's claim was to be the responsibility of the receiver.

In ordinary circumstances, under New York State law, receivers appointed as per N.Y.Civ.Prac.Law § 6401 (McKinney 1980) are paid out of the property collected. If expenses exceed the amount in the receiver's hands the entity asking for the appointment of the receiver may be asked to make up the difference. *See Studio #54 Disco, Inc.,* 21 B.R. 308, 312 (Bankr.E.D.N.Y.1982); *Amusement Distributor, Inc. v. Oz Forum, Inc.,* 113 A.D.2d 855, 493 N.Y.S.2d 791 (N.Y.App.Div.2d Dept.1985); N.Y.Civ.Prac.Law § 8004 (McKinney 1981).

In this case Winfield's claim was not paid out of the property or funds which came into the possession of the receiver, nor was the party which requested the appointment of a receiver, namely the State, ordered by the State Court to pay the claim, because Plaksin, in his capacity as president of AMC was authorized and ordered by the State Court to pay Winfield's claim. This evidences the intent and expectation of Winfield and AMC that Winfield was not to be paid through Randolph or Alaznaki but by AMC itself. In sum Winfield's claim is

nothing more than an unsecured prepetition obligation of the Debtor.

Finally, although it is apparent that Winfield's services contributed to the preservation of the estate, the Bankruptcy Code makes no provision for the allowance of such a claim as an administrative expense unless the claim arose after the commencement of the case as provided for by § 503(b)(1)(A).[2] Here the claim arose prior to the commencement of the case and thus fails to qualify as an administrative expense under that section.

### CONCLUSIONS

1. This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A).

2. Winfield's claim is an unsecured prepetition claim and is not entitled to payment as an administrative expense pursuant to § 503(b)(3)(E) nor § 503(b)(1)(A).

3. Winfield's motion is denied.

Submit order consistent with this opinion.

---

2. Section 503(b)(1)(A) states:
  After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
  (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case