**In re POSADAS ASSOCIATES, a New Mexico limited partnership, Debtor.**

**Bankruptcy No. 11–90–00636 M L.**

United States Bankruptcy Court,
D. New Mexico.

May 13, 1991.

Edward D. Myers, Albuquerque, N.M., for debtor.

David T. Thuma, Albuquerque, N.M., for RTC.

Douglas R. Vadnais, Albuquerque, N.M., for Mariner Hotel Corp.

P. Diane Webb, Albuquerque, N.M., Asst. U.S. Trustee.

## MEMORANDUM OPINION

MARK B. McFEELEY, Chief Judge.

This matter came before the Court for final hearing on Mariner Hotel Corporation's first amended motion for relief for custodian and other entities with respect to turnover. ABQ Bank and the debtor objected to the motion. At the commencement of the hearing, counsel informed the Court that a stipulation had been reached in regard to some of the matters in the motion, but remaining for the Court to determine were: whether attorney fees for the custodian would be allowed as an administrative expense and whether the purchase and installation of a computer system by Mariner would be allowed as an administrative expense. The Court ruled from the bench as to the cost of the computer system and post-April 9, 1990, attorney fees, finding that these items would be allowed as administrative expenses. The Court took under advisement the question of whether post-filing, pre-April 9, 1990, attorney fees would be allowed as an administrative expense, instructing counsel to file letter memoranda on the issue. Having considered the arguments of counsel, the exhibits, and the applicable law, the Court concludes that the post-filing, pre-April 9, 1990, attorney fees will not be allowed. The objections by the debtor and ABQ Bank will be sustained.

FACTS

On November 15, 1989, an order appointing receiver was entered in New Mexico's Third Judicial District state court. ABQ Bank had moved for the appointment and to enforce assignments of rents and income. The court appointed Guy J. Roney III, an employee of Mariner Hotel Corporation (Mariner), as receiver. Paragraph 5 of the order gave the receiver the authority to "delegate any and all authority, rights and powers to the real estate manager or management company." The state court judge appointed Mr. Roney with the understanding that Mariner would serve as the management company, operate the property through its employees, prepare all necessary accountings, and report the results to the state court on a monthly basis. On January 10, 1991, Thomas J. O'Leary was substituted as receiver, and Mr. Roney was discharged. Mariner continued as the management company.

On March 2, 1990, the debtor filed for relief under chapter 11 of the Bankruptcy Code. On the same day, the debtor also filed an emergency motion for § 543(b)[1] turnover. In response, ABQ Bank, the party who had instituted the state court receivership proceedings, filed a motion to permit the receiver to remain in possession. ABQ Bank also filed a motion to appoint a trustee which incorporated the allegations of its motion to permit the receiver to remain in possession. This Court entered an interim order allowing the receiver to remain in possession and control as receiver until the final ruling on the motions. Thereafter, the Court entered an order which excused compliance with turnover and allowed the receiver to remain in possession.

On April 9, 1990, Mariner filed a motion for relief for custodian and other entities with respect to turnover.[2] Pursuant to separate stipulations entered into between Mariner and ABQ Bank, and Mariner and the debtor, the April 9, 1990, motion constitutes an application by Mariner to employ Scott, Hulse, Marshall, Feuille, Finger & Thurmond, P.C., and Modrall, Sperling, Roehl, Harris & Sisk, P.A. The Court, from the bench, approved the employment and allowed the post-April 9, 1990, attorney fees as an administrative expense. Detailed attorney time sheets introduced as an exhibit at the hearing on the first amended motion for relief for custodian begin on the date of March 13, 1990, eleven days *after* the bankruptcy filing. Thus, pre-filing fees for the custodian are not considered in the motion.

Thus, the sole question remaining for the Court is whether the post-filing, pre-April 9, 1990, attorney fees will be allowed as an administrative expense. The legal question which then arises is whether prior approval of employment of professional persons pursuant to § 327(a)[3] is required when a custodian is excused from compliance with

---

**1.** 11 U.S.C. 543(b) provides:

A custodian shall—
(1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and
(2) file an accounting of any property of the debtor, or proceeds, product, offspring, rents or profits of such property, that, at any time, came into the possession, custody, or control of such custodian.

**2.** The April 9, 1990, motion for relief for custodian and other entities with respect to turnover sought, *inter alia*, that Mariner be substituted as receiver/custodian for the Holiday Inn de Las Cruces and Plaza Suites Hotel, and that the receiver be permitted to pay past due, post-receivership obligations incurred by Mariner on behalf of the property, such as money advanced for payroll, monies spent for temporary structural support of the roof, purchase of a computer accounting system and attorney fees. Some of these issues have already been resolved. The issues that remained pending were incorporated into Mariner's first amended motion for relief for custodian and other entities with respect to turnover, which is the subject of this opinion.

**3.** 11 U.S.C. § 327(a) provides:

Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountant, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

turnover. Mariner argues that § 327 is inapplicable, and thus prior court approval is unnecessary because there are other provisions in the Code which govern compensation for a custodian, namely § 503(b)(3)(E) [4] or alternatively, § 543(c)(2). [5] The objectors claim that these sections provide only for custodians who have been *superseded*, that § 327 does apply, and that since employment of professional persons was not sought until April 9, 1990, compensation for such professionals should be denied. The Court agrees with the objectors.

## DISCUSSION

■ The Code clearly contemplates that in the usual course of events a custodian [6] will not remain in possession, as is seen from the language of § 543. Note the mandate in § 543(b) which states that the custodian *shall* deliver to the trustee any property of the debtor and file an accounting as soon as the custodian acquires knowledge of the case. § 543(b). Compare this with § 543(d)(1), which states that the Court *may* excuse compliance with turnover. [7] Further support for this reading of the Code comes from § 503(b)(3)(E), which allows as an administrative expense, and therefore first priority, [8] costs of a superseded custodian.

■ The Court shall provide for the payment of reasonable compensation for expenses incurred by the custodian in preparation for the turnover. § 543(c)(2). In the usual course of events, the custodian is then superseded by the debtor in possession or a trustee. Once superseded, the custodian is allowed to recover the actual, necessary expenses incurred by such custodian as an administrative expense. § 503(b)(3)(E). Under § 503(b)(4), reasonable compensation for professional services by an attorney or accountant rendered in connection with subparagraph (3) is an administrative expense. The Code indicates that the Court *shall* allow the superseded custodian to recover the fees and costs incurred, being bound only by the requirement that they be reasonable and necessary. [9] Prior court approval is not required if counsel is entitled to compensation by virtue of § 503(b)(4). *In re Washington Lane Associates*, 79 B.R. 241 (Bankr.E.D. Pa.1987).

This case did not follow the usual course of events as contemplated by the Code because the Court excused compliance with turnover pursuant to § 543(d) and allowed the custodian to remain in possession. The Code does not specifically state how the custodian's fees and expenses are to be

**4.** 11 U.S.C. § 503(b)(3)(E) provides:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
(E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian;

**5.** 11 U.S.C. § 543(c)(2) provides:

(c) The court, after notice and hearing, shall—
(2) provide for the payment of reasonable compensation for services rendered and costs and expenses incurred by such custodian;

**6.** A state court-appointed receiver is clearly a custodian under § 101(11)(A). *In re Gomes,* 19 B.R. 9 (Bankr.R.I.1982); *In re Left Guard of Madison, Inc.,* 11 B.R. 238 (Bankr.W.D.Wis. 1981).

**7.** 11 U.S.C. § 543(d)(1) provides:

(d) After notice and hearing, the bankruptcy court—
(1) may excuse compliance with subsection (a), (b), or (c) of this section, if the interest of creditors, and, if the debtor is not insolvent, of [sic] equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property,....
Section (d)(2) goes on to provide that the court shall excuse compliance if the custodian is an assignee for the benefit of creditors that was appointed or took possession more than 120 days before the date of filing.

**8.** 11 U.S.C. § 507(a)(1) provides:

(a) The following expenses and claims have priority in the following order:
(1) First, administrative expenses allowed under section 503(b) of this title,....

**9.** The parties stipulated that the fees were reasonable and necessary. Stipulations, entered February 14, 1991.

treated when excused from compliance with turnover. After going through the statutory scheme for compensation for costs incurred by a custodian, one court stated that "federal law does not anticipate compensation to a receiver's counsel, except to the extent that the receiver's expenses have been allowed in connection with preservation of estate property *or by order of the Bankruptcy Court.*" In the *Matter of North Port Development Company,* 36 B.R. 19, 21 (Bankr.E.D.Mo.1983) (emphasis added). Therefore, the custodian must obtain prior court approval to employ professional persons in order for such professional persons to be compensated.

Once excused from compliance and allowed to remain in possession, a custodian is in the same fiduciary capacity as a trustee or a debtor in possession. A custodian is required, just as a debtor in possession and trustee are, to obtain prior court approval to employ professional persons pursuant to § 327(a). The custodian is required to comply with § 327, certifying in its application that the persons sought to be employed do not hold or represent an interest adverse to the estate, and that they are disinterested persons. Requiring the custodian who has been excused from compliance with turnover to apply for prior court approval to employ professional persons then preserves the normal safeguards.

■ The Court therefore finds that a custodian who remains in possession must comply with the Code provisions concerning the employment of professional persons just as the trustee or the debtor in possession. This is true especially for matters which are outside the scope of § 543.[10]

Section 543 contemplates the allowance as an administrative expense of the costs associated with *compliance* with turnover. Where, as here, the custodian seeks allowance as an administrative expense those costs associated with *resisting* turnover, those costs are outside the ambit of § 543 and § 503(b)(3)(E). Compensation and costs under §§ 543(c)(2), 503(b)(3)(E), and 503(b)(4) are restricted to that required for the custodian to fulfill responsibilities under § 543, *i.e.,* preservation, turnover and accounting. In the *Matter of North Port Development Company,* 36 B.R. 19 (Bankr.E.D.Mo.1983); *In re Marichal–Agosto, Inc.,* 12 B.R. 891 (Bankr.S.D.N.Y. 1981). The facts of this case show that the state court-appointed receiver was working in concert with a secured creditor, ABQ Bank, to excuse compliance with turnover. The grounds for the motion to excuse compliance, and the companion motion to appoint trustee filed by ABQ Bank, were to prevent the debtor from continuing to defraud the estate.[11] The end result of the motions was that the custodian was left in possession. Where the custodian did not turn anything over to the trustee or the debtor in possession, the custodian is not entitled to compensation from the bankruptcy estate under § 503(b)(3)(E). *In re Gherman,* 105 B.R. 714 (Bankr.S.D.Fla. 1989). The custodian must obtain prior court approval to be compensated under other provisions of the Code. Since that was not done, compensation for the custodian will not be approved.

■ Within §§ 503 and 543 is the recognition that a custodian will incur costs in

---

10.  11 U.S.C. § 543(b) provides that the custodian must turnover the property upon acquiring knowledge of the filing of a bankruptcy petition. The custodian is then required to deliver the property and file an accounting of the property of the debtor. The compensation that § 543(c) speaks to is in regard to any expenses or costs incurred in preparation for such turnover. Such expenses are clearly reimbursable as administrative expenses pursuant to these sections and § 503(b)(3)(E).

11.  ABQ Bank alleged numerous instances of misconduct on behalf of C.W. Ritter, a general partner of the debtor. These allegations of misconduct included, among other things, that: Ritter maintained himself and other family members on the payroll of the debtor at high salaries; Ritter caused the debtor to engage in transactions with other Ritter-controlled entities, incurring over $1,000,000 worth of debt; Ritter had Holiday Inn, an asset of the debtor, pay his personal expenses; Ritter had Holiday Inn pay for hotel employees to perform various services for his personal residence, i.e., maid, seamstress, gardener, carpenter and engineering staff; Ritter had Holiday Inn pay for property used by him and his family personally; and that Ritter violated the state court order and withdrew personal funds from Holiday Inn.

**282**

the process of turnover and that these costs are to be accorded administrative expense treatment and therefore paid first without need for prior court approval. *North Port*, 36 B.R. 19; *Marichal*, 12 B.R. 891. Indeed, the Code provides that the Court *shall* reimburse the custodian. *Washington Lane*, 79 B.R. 241. However, where the custodian incurs costs not for complying with the turnover provisions of the Code but for resisting turnover, the Court finds that prior court approval is necessary in order for the fees and costs to be considered for administrative expense priority.

This memorandum opinion constitutes the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052.

An appropriate order shall enter.

### ORDER

This matter came before the Court for final hearing on Mariner Hotel Corporation's first amended motion for relief for custodian and other entities with respect to turnover. ABQ Bank and the debtor objected to the motion. For the reasons set forth in the memorandum opinion entered herewith,

IT IS ORDERED that the objections of ABQ Bank and the debtor are partially sustained. Post-bankruptcy filing, pre-April 9, 1990, attorney fees are not allowed as an administrative expense. Post–April 9, 1990, attorney fees are allowed as an administrative expense. Payment of the allowed attorney fees are authorized to be paid, pro-rata, to the extent the debtor makes any monthly payments of administrative expenses.

IT IS FURTHER ORDERED that the cost of the computer system is allowed as an administrative expense and is authorized to be paid, pro rata, to the extent the debtor pays administrative expenses.