**In re Mary Jane RUNDLETT.**

**No. 91 B 21781.**

United States Bankruptcy Court, S.D. New York.

Feb. 27, 1992.

Shaw, Licitra, Esernio & Schwartz, P.C., Garden City, N.Y., for debtor.

Zalkin, Rodin & Goodman, New York City, for petitioning creditors.

### DECISION ON APPLICATION FOR RETENTION OF ATTORNEYS FOR DEBTOR

HOWARD SCHWARTZBERG, Bankruptcy Judge.

American Savings Bank ("ASB"), The Bank of New York ("BONY"), Bank of America, N.T. & S.A. ("BOA"), Barclays Bank of New York ("Barclays") and Cross-

land Savings Bank F.S.B. ("Crossland"), referred to collectively as "the banks," object to the application of Mary Jane Rundlett, the Chapter 7 debtor in this case, to retain the law firm of Shaw, Licitra, Parente, Esernio & Schwartz ("Shaw") as counsel for the debtor. The Shaw application seeks retention *nunc pro tunc* to December 5, 1991, when the debtor converted an involuntary Chapter 7 petition against her to a voluntary case under Chapter 11 of the Bankruptcy Code, which has since been reconverted by the court to a Chapter 7 case, by order dated February 18, 1992.

The banks object to the proposed order of retention on the ground that Shaw represents an interest adverse to the Chapter 7 estate within the meaning of 11 U.S.C. § 327(a). The conflict of interest is based on the fact that Shaw also represents Private Capital Partners, Inc. ("PCPI"), an investment banking firm which filed with this court a voluntary petition for reorganizational relief under Chapter 11 of the Bankruptcy Code on October 10, 1991. The Chapter 7 debtor in this case, Mary Jane Rundlett, is the widow of Donald H. Rundlett, who was the Chairman, Chief Executive Officer of PCPI and the holder of a 60 percent equity interest in PCPI when he died on August 25, 1991. She is a creditor of PCPI as a result of having guaranteed several million dollars of indebtedness owed by PCPI and having made loans to PCPI.

The banks also request that the $50,000.00 retainer paid by the debtor to the Shaw firm during "the gap" period be returned to this estate.

### FACTUAL BACKGROUND

On November 15, 1991, ASB, Bony and BOA filed an involuntary petition against the debtor for relief under Chapter 7 of the Bankruptcy Code.

On November 20, 1991, during the "gap period," the debtor paid Shaw the sum of $50,000.00 as a retainer for representing her as bankruptcy counsel. Thereafter, on December 5, 1991, before an order for relief was entered in the involuntary Chapter 7 case, the debtor converted the involuntary Chapter 7 case to a voluntary case under Chapter 11 of the Bankruptcy Code in accordance with 11 U.S.C. § 706(a). The order for relief was entered on December 5, 1991 and the debtor continued in management of her assets as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

On December 16, 1991, the debtor filed a proposed order authorizing the retention of the Shaw firm on behalf of the Chapter 11 debtor with the Office of the United States trustee. Owing to no fault on the debtor's part and as a result of internal delay in the United States trustee's office, no action was taken on the proposed order of retention until January 1, 1992, when an assistant United States trustee wrote a memo to Shaw explaining the delay and noting that should the retention be approved, "I will not object to it on a *nunc pro tunc* basis." The memo also said: "The application does not disclose that Mrs. Rundlett is/was a creditor of Private Capital. If that results in Mrs. Rundlett being a creditor, that should be disclosed."

Thereafter, the banks jointly moved in the Chapter 11 case for an order pursuant to 11 U.S.C. § 1112(b)(1) and (2) converting it to a Chapter 7 case under the Bankruptcy Code. On February 10, 1992, this court granted the banks' motion and ruled that there was an absence of a reasonable likelihood of rehabilitation and that the debtor was unable to effectuate a Chapter 11 Plan. Accordingly, this court entered an order dated February 18, 1992, converting the debtor's Chapter 11 case to Chapter 7 under the Bankruptcy Code.

Shaw's supplemental application for retention fully discloses the fact that the Chapter 7 debtor is a creditor of PCPI. It is asserted that there is no adverse interest because PCPI holds no claim against the debtor and that to the extent that PCPI repays the banks in its Chapter 11 case, PCPI will reduce this debtor's contingent claims against PCPI under her guaranties. Hence, she maintains that there exists a unity of interests and not a conflict of interests.

The banks offered no evidence to show that the $50,000.00 retainer paid to Shaw in "the gap" period before an order for relief was entered was either excessive or improper for the legal services performed by Shaw.

## DISCUSSION

To be retained retroactively as of the commencement of the aborted Chapter 11 case, the Shaw firm must hurdle two distinct *per se* doctrines. The United States Court of Appeals for the Second Circuit continues to follow the *per se* rule that an attorney's failure to obtain prior approval for the retention of services by the bankruptcy court is a *per se* preclusion of a *nunc pro tunc* order. *Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics),* 655 F.2d 463, 469 (2d Cir. 1981), *cert. denied,* 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *Arthur Anderson & Co. v. Vincent,* 308 F.2d 808 (2d Cir.1962); *In re Progress Lektro Shave Corp.,* 117 F.2d 602 (2d Cir.1941); *In re Eureka Upholstering Co.,* 48 F.2d 95 (2d Cir.1931). However, there is some discretionary authority which will afford an exception to the *per se* rule for excusable neglect or unavoidable hardship. *In re Robotics Resources R2, Inc.,* 117 B.R. 61 (Bankr.D.Conn.1990). The Third Circuit Court of Appeals rejects the *per se* rule and follows a discretionary policy on a case by case basis. *In re BH & P Inc.,* 949 F.2d 1300 (3d Cir.1991); *In re Arkansas Co., Inc.,* 798 F.2d 645 (3d Cir.1986).

■ The fact that the Shaw firm participated in the involuntary Chapter 7 case during the "gap period" and thereafter in the aborted Chapter 11 case, and that this fact was patently known to the court and the creditors, does not overcome the requirement of prior approval. The requirement of prior approval was intended to afford the court an opportunity to determine if an attorney meets the requirements of 11 U.S.C. § 327(a) on the basis of existing facts and not as a result of the passage of time. *In re Wellington Development of Florida, Inc.,* 119 B.R. 65 (Bankr.W.D.Pa. 1990).

In the instant case both the excusable neglect theory and the discretionary rule followed in other circuits should support the debtor's position that from a chronological point of view the *nunc pro tunc* retention order should be allowed because the debtor had no control over the dilatory processing procedure followed by the United States trustee's office, which did not address the application until January 27, 1992, the month before the aborted Chapter 11 case was converted to Chapter 7.

The second *per se* rule which the debtor confronts is whether multi-debtor representation, where one debtor is a creditor of the other, constitutes a *per se* conflict of adverse interests so as to disqualify the firm from complying with the requirements of 11 U.S.C. § 327(a) as to interests that are not "adverse" or not "disinterested." In this district, it has been held that intercompany claims do not constitute an impermissible conflict of interest for representation. *O.P.M. Leasing Services, Inc.,* 16 B.R. 932 (Bankr.S.D.N.Y.1982). However, this court has said that a "disinterested" person should be divested of any scintilla of personal interest which might reflect in his decision concerning estate matters. *In re Codesco, Inc.,* 18 B.R. 997, 999 (Bankr. S.D.N.Y.1982). The Fifth Circuit stated:

The standards for the employment of professional persons are strict, for Congress has determined that strict standards are necessary in light of the unique nature of the bankruptcy process.

*Pierson & Gaylen v. Creel & Atwood (In re Consolidated Bancshares, Inc.),* 785 F.2d 1249, 1256 n. 6 (5th Cir.1986) (citation omitted). Even in those cases where a *per se* rule does not apply against multi-debtor representation, an actual conflict in interest will disqualify the attorney from obtaining court approval. *BH & P,* 949 F.2d at 1315.

There was no actual conflict in the aborted Chapter 11 case because PCPI, the debtor's late husband's company, held no claims against the debtor. On the other hand, whereas the debtor was a creditor of PCPI, she could only recover against PCPI upon a distribution to all of the creditors in PCPI's Chapter 11 case should it succeed in con-

firming a Chapter 11 plan of reorganization. Additionally, the bank creditors of PCPI who hold guaranties executed by Mary Jane Rundlett are also creditors in her Chapter 7 case. In view of the fact that both debtors are under the aegis of this court, there is no basis for concern that one set of creditors will receive more favorable treatment than another group of creditors in either case merely because the Shaw firm might be approved to represent both debtors. Indeed, in the present posture of the two cases, there can be no conflict because Mary Jane Rundlett's Chapter 7 estate and interests will be represented by a trustee in bankruptcy. Shaw will not represent the Chapter 7 trustee; he will simply represent the Chapter 7 debtor's interests, including any objections to her claimed exemptions.

 Although the two *per se* hurdles do not appear to be insurmountable obstacles for the Shaw firm to hurdle, there is yet a more practical reason why the *nunc pro tunc* retention should not be approved. Mary Jane Rundlett's aborted Chapter 11 case has been converted to Chapter 7. There are no further legal activities to be performed in that case by the Shaw firm. The only purpose to be served by the proposed retroactive approval is to obtain this court's imprimatur of approval with respect to the $50,000.00 retainer which Mary Jane Rundlett paid Shaw during "the gap" period. However, Shaw does not require this court's blessings for that purpose and a *nunc pro tunc* retention should not be granted solely to accomplish this goal. The retainer was paid in "the gap" period before an order for relief could be entered under 11 U.S.C. § 303(h). The debtor was free to retain attorneys to represent her in the involuntary case. Pursuant to 11 U.S.C. § 303(f), unless and until an order for relief is entered, or the court orders otherwise, "the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced." 11 U.S.C. § 303(f). Until the order for relief was entered the Shaw firm were not attorneys in the bankruptcy estate whose retention required court approval.

Before the case was filed and after it was converted to chapter 7 and a trustee appointed, the attorneys were private attorneys for the debtor. They were not representatives of the bankruptcy estate whose employment was subject to approval by the court.

*In re Roaring Creek Mining Co., Inc.*, 51 B.R. 866, 869 (Bankr.E.D.Tenn.1985). The only restriction on a debtor's payment of attorneys' fees within one year before the date of the filing of the petition arises out of 11 U.S.C. § 329. Under this section, the court may review payments made to attorneys within the one-year period for services in the bankruptcy case to determine if the compensation exceeds the reasonable value of such services. If the fee is excessive, the court may cancel the retainer or order the return of the excessive payment. 11 U.S.C. § 329(b).

Notwithstanding their objection to the $50,000.00 retainer which the debtor paid Shaw, the banks offered no evidence that the fee was excessive. Indeed, Shaw was most diligent in representing the debtor's interests in the aborted Chapter 11 case. It was only after a hard fought trial with respect to the banks' motion for conversion to Chapter 7 pursuant to 1112(b) that Shaw was prevented from continuing to represent the debtor's interests in the chapter 11 case. Hence, having uncovered no evidence that the $50,000.00 retainer was tainted by the performance of legal services of a lesser value, there is no basis for ordering Shaw to return any part of the retainer, as requested by the banks.

Accordingly, there is no purpose to be served by approving a *nunc pro tunc* retention of legal representation for the aborted Chapter 11 case. Additionally, there is no reason Shaw's retention by the Chapter 7 debtor should not be approved as of February 18, 1992, when the order for conversion was entered in this court.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 28 U.S.C. § 157(a).

**148**

This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

2. The debtor's application to retain the Shaw firm *nunc pro tunc* to December 5, 1991, the date when the debtor converted her involuntary Chapter 7 case to a voluntary Chapter 11 case, is denied because there is no purpose served in approving legal representation for an aborted Chapter 11 case.

3. The debtor's application to retain the Shaw firm as her attorneys in the Chapter 7 case is approved as of February 18, 1992, when the order for conversion was entered in this court.

4. The banks' application to direct the Shaw firm to return the $50,000.00 retainer paid by the debtor in the "gap period", before an order for relief was entered, is denied because there was no proof that the fee paid by the debtor for the legal services performed by the Shaw firm was not earned or was excessive within the meaning of 11 U.S.C. § 329(b).