**In re 245 ASSOCIATES, LLC, Debtor.**

**Bankruptcy No. 95–B–41698.**

United States Bankruptcy Court, S.D. New York.

Nov. 6, 1995.

As Corrected Nov. 9, 1995.

Rosenman & Colin, LLP (David J. Mark, of counsel), New York City, for Debtor.

Seiden, Stempel & Bennett (Richard L. Claman, of counsel), New York City, for Steven Klein.

Backenroth & Grossman, LLP (Robert E. Grossman, Mark A. Frankel, of counsel), New York City, for 245 Seventh Avenue Associates, LLC.

## MEMORANDUM DECISION AND ORDER DENYING RECEIVER'S APPLICATION FOR AUTHORIZATION TO RETAIN COUNSEL

STUART M. BERNSTEIN, Bankruptcy Judge.

The Applicant, Steven Klein, is the state court-appointed receiver of the debtor's real property whom we briefly continued in possession under 11 U.S.C. § 543(d)(1). The law firm of Seiden, Stempel & Bennett (the "Firm") represented him in connection with the receivership, but Klein delayed in asking for bankruptcy court approval of that retention. He now seeks to cure this omission by asking for approval of the retention *nunc pro tunc* to an earlier date.

■ Klein's application presents two issues: (1) must the receiver, continued in possession by the bankruptcy court, obtain its authorization to retain an attorney, and if he must, (2) can the court authorize the retention *nunc pro tunc*. For the reasons that follow, we conclude that Klein required a prior court order to retain counsel, but he can cure his prior failure through a *nunc pro tunc* retention order. The current application, however, suffers several deficiencies which he must cure. We grant him leave to file a new application, but because we have already confirmed a plan and Klein's legal fees and expenses will be administrative

claims, he must submit his revised application within fifteen days of this order.

## FACTS

On April 18, 1995, 245 Seventh Avenue Associates, LLC ("Associates") commenced this case by filing an involuntary chapter 7 petition against the debtor. The debtor thereafter converted the case to a chapter 11, and the Court entered an order for relief on May 22, 1995. On the commencement date, Klein was acting as receiver of the debtor's sole asset—a building located at 245 Seventh Avenue—pursuant to a prior state court order entered in the foreclosure proceeding that the debtor's mortgagee, East New York Savings Bank, had instituted. The bank subsequently assigned the note and mortgage to Associates who, apparently preferring the bankruptcy court forum, filed the involuntary case.

Following the commencement of the case, Klein failed to surrender possession or turn over any property to the debtor. Consequently, on June 9, 1995, the debtor moved for an order under 11 U.S.C. § 543 [1] to compel Klein to turn over the debtor's property and file an accounting. Associates objected, and moved on June 19, 1995, *inter alia,* for an order under 11 U.S.C. § 543(d)(1) to continue the receivership and excuse compliance with the receiver's duty to turn over and account. After hearing the parties on June 21, 1995, the Court continued the receivership pending an evidentiary hearing scheduled to begin on July 25, 1995.

The Court commenced but did not complete the evidentiary proceeding on that day, and adjourned it to August 14, 1995. On the adjourned date, the debtor and Associates announced a consensual protocol for dealing with the reorganization and the termination of the receivership. The parties memorialized their agreement in a September 6, 1995 stipulation, which provided, *inter alia,* that Klein should turn over the estate's property to the debtor, and file his accounting.

In the meantime, on or about August 23, 1995, Klein submitted an application to retain the Firm as his attorneys, *nunc pro tunc* to May 22, 1995.[2] The Firm had represented Klein in connection with the receivership, and had appeared on his behalf in the bankruptcy court. The proposed scope of the retention included landlord-tenant and related matters but was broad enough to reach virtually any matter affecting the receivership. The debtor objected to the *nunc pro tunc* aspect of the proposed retention.

## DISCUSSION

### A. Effect of Bankruptcy on Receiverships

The issues require that we first parse the rules governing the receiver's came into the possession, custody, or control of such custodian.
(c) The court, after notice and a hearing, shall—
....
(2) provide for the payment of reasonable compensation for services rendered and costs and expenses incurred by such custodian....
(d) After notice and hearing, the bankruptcy court—
(1) may excuse compliance with subsection (a), (b), or (c) of this section if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property....

1. Section 543 provides, in pertinent part, as follows:

(a) A custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property.
(b) A custodian shall—
(1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and
(2) file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property that, at any time,

2. Klein contends that he took this action as the result of a suggestion that we made at a July 16, 1995 hearing. July 16 fell on a Sunday, and Klein probably means July 19 at which time we heard the debtor's motion to prevent Klein from terminating certain tenancies.

duties once bankruptcy ensues, and his corresponding right to recover his attorney's fees and expenses. State court receivers are "custodians" within the meaning of the Bankruptcy Code. 11 U.S.C. § 101(11)(A); *accord In re Snergy Properties, Inc.*, 130 B.R. 700, 703 (Bankr.S.D.N.Y.1991); *In re Posadas Assocs.*, 127 B.R. 278, 280 n. 6 (Bankr. D.N.M.1991). Ordinarily, the commencement of the case "supersedes" the custodianship. Once the receiver becomes aware of the filing of the petition, including an involuntary petition,[3] he cannot make any further disbursements or take any action except to do what is necessary to preserve the property, 11 U.S.C. § 543(a); he must deliver to the trustee any property of the debtor, 11 U.S.C. § 543(b)(1); and he must file an accounting. 11 U.S.C. § 543(b)(2); Fed.R.Bankr.P. 6002(a).

Several Bankruptcy Code provisions authorize the Court to compensate and reimburse the superseded custodian for certain pre-petition and post-petition services. Section 503(b)(3)(E)[4] grants the superseded receiver an administrative claim for his actual, necessary costs and expenses, and for his compensation, and section 503(b)(4)[5] covers the reasonable compensation payable to the superseded custodian's attorney or accountant. Section 503(b)(3)(E) (and hence, section 504(b)(4)) does not distinguish between pre-petition and post-petition services, but its legislative history explains that it is confined to the former, codifying the common law rule that accorded a priority to the services rendered by a pre-petition custodian to the extent those services actually benefitted the estate. 124 Cong. Rec. H 11,094–95 (daily ed. Sept. 28, 1978) (remarks of Rep. Ed-

wards); 124 Cong. Rec. S 17,411 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini); *see, e.g., In re American Motor Club, Inc.*, 125 B.R. 79, 81–82 (Bankr.E.D.N.Y.1991); *In re Kenval Mktg. Corp.*, 84 B.R. 32, 35 (Bankr.E.D.Pa.1988); *In re Jensen–Farley Pictures, Inc.*, 47 B.R. 557, 589 (Bankr. D.Utah 1985); *In re North Port Dev. Co.*, 36 B.R. 19, 21 (Bankr.E.D.Mo.1983). *But see In re Posadas*, 127 B.R. at 281 (holding that sections 503(b)(3)(E) and 503(b)(4) also grant administrative status to the "winding up" costs and expenses allowable under section 543(c)(2)).

Section 543(c)(2) deals with certain of the receiver's post-petition services. It directs the court to "provide for the payment of reasonable compensation for services rendered and costs and expenses incurred by such custodian," but this subsection is limited to the "winding up" duties imposed under sections 543(a) and (b). *In re Posadas Assocs.*, 127 B.R. at 281–82; *In re Kenval Mktg. Corp.*, 84 B.R. at 34 n. 2. Accordingly, the superseded receiver need not obtain a retention order for the lawyer that assists him in performing these duties. *See, e.g., In re Snergy Properties, Inc.*, 130 B.R. at 704–05; *In re Posadas Assocs.*, 127 B.R. at 281–82.

While the commencement of the case ordinarily supersedes the receivership, there is an exception to this rule. After notice and hearing, the court may continue the receivership, and relieve the receiver from the duty to comply with the turnover and accounting requirements of section 543(b), if this better serves the interests of the creditors (and the solvent debtor's equity

---

3. The filing of a petition—whether voluntary or involuntary—commences a case under the Bankruptcy Code. *See* 11 U.S.C. § 301 (voluntary petition); § 302(a) (joint petition); § 303(b) (involuntary petition)

4. Section 503(b)(3)(E) provides an administrative priority for the following:
   (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
   . . . .
   (E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian. . . .

5. Section 503(b)(4) creates an administrative claim for the following:

   reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant. . . .

security holders). 11 U.S.C. § 543(d)(1). Section 543(d)(1) is a modified abstention provision that reinforces the policies set forth in 11 U.S.C. § 305. *Dill v. Dime Sav. Bank, FSB (In re Dill)*, 163 B.R. 221, 225 (E.D.N.Y. 1994); *In re Constable Plaza Assocs., L.P.*, 125 B.R. 98, 103 (Bankr.S.D.N.Y.1991); *In re Pine Lake Village Apartment Co.*, 17 B.R. 829, 833 (Bankr.S.D.N.Y.1982). The bankruptcy case, however, continues while the receiver remains in possession, and the debtor's property remains subject to the bankruptcy court's jurisdiction[6]. Thus,, despite the continuation of the receivership, the debtor and, if exclusivity has ended, any party in interest can file a plan.

■■■■ Unlike the superseded receiver, where the receiver is continued, the Bankruptcy Code does not expressly provide for the reimbursement and compensation of the receiver or his attorneys. *In re Posadas Assocs.*, 127 B.R. at 280–81.[7] Nevertheless, continuation of the receivership surely implies that the receiver can recover his compensation, reimbursement for expenses and payment of his legal fees from the estate. The first question then is whether the continued receiver, like the trustee or the debtor-in-possession, must obtain a bankruptcy court order approving the retention of his attorney as a condition to the estate having to bear his legal fees.

## B. Retention of Professionals Under the Bankruptcy Code

■■■■ The Bankruptcy Code provides that the trustee and the official creditors' committee may employ a professional, including an attorney, with the bankruptcy court's approval. 11 U.S.C. §§ 327(a), 1103(a). Further, the bankruptcy court cannot award interim or final compensation unless it has authorized the attorney's employment under sections 327 or 1103. The bankruptcy court must, therefore, formally approve an attorney's retention *prior to the time* that the attorney renders services compensable by the estate. *In re Robotics Resources R2, Inc.*, 117 B.R. 61, 62 (Bankr.D.Conn.1990); *In re Brown*, 40 B.R. 728, 730 (Bankr. D.Conn.1984); *In re Sapolin Paints Inc.*, 38 B.R. 807, 817 (Bankr.E.D.N.Y.1984).

■■ In the Second Circuit, this represents a *per se* rule, and forbids allowing compensation to any professional for services rendered prior to the attorney's retention by an order of the bankruptcy court. *See, e.g., Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics Corp.)*, 655 F.2d 463, 469 (2d Cir.1981), *cert. denied*, 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *Smith v. Winthrop, Stimson, Putnam & Roberts (In re Sapphire Steamship Lines, Inc.)*, 509 F.2d 1242, 1245–46 (2d Cir.1975); *In re Progress Lektro Shave Corp.*, 117 F.2d 602, 604 (2d Cir.1941); *In re Rogers–Pyatt Shellac Co.*, 51 F.2d 988, 991 (2d Cir.1931); *In re Robotics Resources R2, Inc.*, 117 B.R. at 62; *In re French*, 111 B.R. 391, 394 (Bankr.N.D.N.Y.1989); *In re Northeast Dairy Co-op. Fed'n Inc.*, 74 B.R. 149, 154 (Bankr.N.D.N.Y.1987); *In re Brown*, 40 B.R. at 731.

Two reasons justify the *per se* rule. First, it discourages volunteer services. *In re Eureka Upholstering Co.*, 48 F.2d 95, 96 (2d Cir.1931); *In re Northeast Dairy Co-op. Fed'n, Inc.*, 74 B.R. at 154; *In re Carolina Sales Corp.*, 45 B.R. 750, 752 (Bankr. E.D.N.C.1985); *In re Sapolin Paints Inc.*, 38 B.R. at 817. Second, it enables the court to review attorneys' potentially disqualifying conflicts or relationships "unaffected by the emotional pressure which inevitably arises in

---

**6.** The commencement of the bankruptcy case vests the district court with exclusive jurisdiction over property of the debtor and the estate. 28 U.S.C. § 1334(e). By order dated July 10, 1984, the district court referred its bankruptcy jurisdiction to the bankruptcy court pursuant to 28 U.S.C. § 157(a).

**7.** Although one might read section 543(c)(2) to encompass the expenses and fees of the continued receiver, the *Posadas* court rejected this interpretation. 127 B.R. at 281. In addition, the construction of section 543 does not support it. Subsection (d)(1) authorizes the court to keep the receiver in possession and excuse compliance with subsections (a), (b) or (c). If section 543(c)(2) were meant to provide the basis for paying the continued receiver's legal fees and expenses, subsection (d)(1) would not have authorized the bankruptcy court to continue the receivership and also dispense with subsection (c)(2).

their favor after the services have been rendered." *In re Rogers–Pyatt Shellac Co.*, 51 F.2d 988, 992 (2d Cir.1931); *accord; In re Northeast Dairy Co-op. Fed'n, Inc.*, 74 B.R. at 154. While the worry over an intermeddler rendering voluntary services is an important one, we are confident that we can deal with the issue of unnecessary services when we consider the attorney's fee application. The prospect of an attorney, tainted by conflict, representing a fiduciary of the estate causes us greater concern, but it is one that the Bankruptcy Code and Rules directly address.

■ The Bankruptcy Code permits the trustee or the creditors' committee to retain an attorney only if the attorney neither holds nor represents an adverse interest. 11 U.S.C. §§ 327(a), 1103(b).[8] Bankruptcy Rule 2014 uncovers potential conflicts by requiring every application for professional retention to state, among other things, any connection that the professional has with the debtor, any creditor or other party in interest, their respective attorneys and accountants, the United States Trustee and anyone that the latter office employs. In addition, the professional must submit a sworn statement providing this same information. Thus, both the applicant (*e.g.*, the debtor) and the professional (*e.g.*, the attorney) must separately certify that no disqualifying connections exist.

■ Bankruptcy Rule 2014 is designed to expose any connections that the professional has with any parties in interest in the case, *In re Futuronics Corp.*, 655 F.2d at 469 (interpreting former Bankruptcy Rule 215), and to ensure that professionals "tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." *In re Leslie Fay Cos.*, 175 B.R. 525, 532 (Bankr.S.D.N.Y.1994) (quoting *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir.1994)). To ensure that this disclosure is made, applicants and their professionals must strictly comply with Rule 2014, and the failure to disclose all connections provides a basis to disallow fees and even disqualify the professional. *Rome v. Braun-*

stein, 19 F.3d at 59–60; *In re Arlan's Dep't Stores, Inc.*, 615 F.2d 925, 933 (2d Cir.1979) (decided under former Bankruptcy Rule 215); *In re Leslie Fay Cos.*, 175 B.R. at 533.

■ The two courts that have considered this issue have concluded that the receiver who remains in possession must follow the procedures set forth in section 327, and obtain a bankruptcy court order approving the attorney's retention. *In re Uno Broadcasting Corp.*, 167 B.R. 189, 201 (Bankr.D.Ariz. 1994); *In re Posadas Assocs.*, 127 B.R. at 281. Once the bankruptcy court continues the receivership under section 543(d)(1), the receiver becomes the functional equivalent of a trustee, *In re Uno Broadcasting Corp.*, 167 B.R. at 201, and owes a trustee's fiduciary duties to all creditors, and assuming solvency, to the debtor's equity security holders. *Id.; In re Posadas Assocs.*, 127 B.R. at 281.

■ We agree with this reasoning. The creditors and equity security holders are entitled to the same safeguards that we demand from trustees. A receiver's attorney with divided loyalties, or worse, poses as great a danger to the creditors and the estate as does the trustee's attorney with the same disqualifying relationships. The continued receiver and his professional must, therefore, disclose all connections and relationships required under Bankruptcy Rule 2014 to ensure that he and his professionals can fulfill the fiduciary responsibilities that the law imposes.

## C. Nunc Pro Tunc Retention

■ The attorney who renders services without an order of retention has only one chance for compensation: *nunc pro tunc* retention. In this, the attorney faces a difficult hurdle. *Nunc pro tunc* retention circumvents the *per se* rule. Consequently, "[a]s a general rule, the Second Circuit prohibits *nunc pro tunc* retention orders," *In re Corbi*, 149 B.R. 325, 333 (Bankr.E.D.N.Y.1993); *see In re Rundlett*, 137 B.R. 144, 146 (Bankr. S.D.N.Y.1992), unless the attorney's belated disclosure does not reveal any disqualifying connection with the case, and the attorney demonstrates "excusable neglect" or "un-

---

8. In addition, section 327(a) requires that the      trustee's professionals must be disinterested.

avoidable hardship." *See In re Rogers–Pyatt Shellac Co.,* 51 F.2d at 992; *In re Rundlett,* 137 B.R. at 146; *In re Robotics Resources R2, Inc.,* 117 B.R. at 62; *In re French,* 111 B.R. at 394; *In re Northeast Dairy Co-op. Fed'n, Inc.,* 74 B.R. at 155; *In re Brown,* 40 B.R. at 731.

In the past, the courts have applied these exceptions strictly, wary of any attempt to avoid the *per se* rule. Mere ordinary negligence did not suffice as "excusable neglect," *In re Brown,* 40 B.R. at 732, and by the same token, neglect also rendered any "hardship" avoidable. *See In re Rogers–Pyatt Shellac Co.,* 51 F.2d at 992. Instead, the professional had to show that the failure to submit an earlier application was due to circumstances beyond its control. *In re Resources R2, Inc.,* 117 B.R. at 62; *In re French,* 111 B.R. at 394; *In re Northeast Dairy Co-op. Fed'n, Inc.,* 74 B.R. at 155; *In re Brown,* 40 B.R. at 731–32. Under this test, courts refused to relieve professionals from the harsh results of the *per se* rule because they were ignorant of the retention requirements, *In re Northeast Dairy Co-op. Fed'n, Inc.,* 74 B.R. at 155; *In re Carolina Sales Corp.,* 45 B.R. at 755; or even though they had openly participated in the case with the knowledge of the court, *In re Rundlett,* 137 B.R. at 146; *see In re Eureka Upholstering Co.,* 48 F.2d at 95; or despite the fact that through their services, they had conferred substantial benefits on the estate. *In re Sapphire Steamship Lines, Inc.,* 509 F.2d at 1246.

▮ The Supreme Court's decision in *Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. Partnership,* —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), however, casts doubt on the results reached in these cases. *In Pioneer,* the Supreme Court construed the phrase "excusable neglect" as it is used in Bankruptcy Rule 9006(b)(1) and concerned the filing of late claims. The Court expanded the definition of "excusable neglect" beyond the traditional formulation of "intervening circumstances beyond the party's control," and held that it also included "inadvertence, mistake, or carelessness." *Id.* at ——, 113 S.Ct. at 1495.[9] Ultimately, the Court stated, the determination is an equitable one that takes account of all of the surrounding circumstances:

> These include ... the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* at ——, 113 S.Ct. at 1498.

We recognize that the extension of *Pioneer* to *nunc pro tunc* employment applications does not automatically follow. Different considerations underlie the requirements for timely retention applications and timely claims. Further, since *Pioneer,* the courts have split on whether its standard of "excusable neglect" applies to *nunc pro tunc* retention applications. *Compare In re Singson,* 41 F.3d 316, 319–20 (7th Cir.1994) (upholding the application of Bankruptcy Rule 9006(b)(1) and the *Pioneer* standard for "excusable neglect" to *nunc pro tunc* retention applications, but concluding that the applicant had failed to demonstrate "excusable neglect") *and In re Urban Broadcasting of St. Louis, Inc.,* 174 B.R. 441, 448–49 (E.D.La.1994) (upholding the bankruptcy court's adoption of *Pioneer's* standard for "excusable neglect") *with In re Franklin Sav. Corp.,* 181 B.R. 88, 89 (Bankr.D.Kan.1995) (*Pioneer* does not apply to the "extraordinary circumstances" standard governing *nunc pro tunc* retention applications) *and In re Berman,* 167 B.R. 323, 324 (Bankr.D.Mass.1994) (*Pioneer* and Bankruptcy Rule 9006(b)(1) do not apply to *nunc pro tunc* retention applications which require a showing of "extraordinary circumstances").

On balance, however, we conclude that the *Pioneer* standard should apply to *nunc pro tunc* employment applications. Late applications and late claims are sufficiently analogous to support judging *nunc pro tunc* retention requests under the *Pioneer* criteria.

---

9. The Court distinguished between inadvertence, mistakes and ignorance in construing rules—which do not usually constitute "excusable" neglect—and the same conduct under Rule 6(b) of the Federal Rules of Civil Procedure, dealing with the enlargement of time within which to perform certain acts, which does. —— U.S. at ——, 113 S.Ct. at 1496.

See *In re Singson*, 41 F.3d at 319–20 (*nunc pro tunc* applications are governed by Bankruptcy Rule 9006(b)(1)). More important, the courts in this circuit have adopted an "excusable neglect" standard rather than the "extraordinary circumstance" test discussed by the *Franklin Savings* and *Berman* courts that declined to extend *Pioneer*. As a result, we do not feel compelled to follow the prior decisions in this and other circuits which applied a different and more rigorous definition of "excusable neglect," and hold that we can authorize a *nunc pro tunc* application if a sufficient application is filed which does not reveal a disqualifying connection, and demonstrates "excusable neglect" under the *Pioneer* test.

### D. The Application to Retain the Firm

#### 1. Compliance with Disclosure Requirements

■ The application to retain the Firm is materially deficient, and must be redone. It states that to the best of Klein's knowledge, the Firm does not represent any interest adverse to Klein or the estate, and the Firm's employment would be in the best interests of the estate. The application fails, however, to disclose the Firm's connections, or affirmatively state that the Firm has no connections, with the debtor, the creditors or other parties in interest, their attorneys or accountants or the United States Trustee or any employees in that office, and we are not prepared to infer that no conflicts exist.

■ The Firm's supporting affidavit, sworn to on August 23, 1995, by Richard L. Claman, although slightly more revealing, still mirrors many of these deficiencies. Mr. Claman states that as far as he can ascertain, neither the Firm nor any of its members, counsel or associates have any connection with the debtor or any other party in interest (which we read to include creditors). He makes no statements regarding any connection with the attorneys and accountants representing these parties, the United States Trustee or any of the employees in that office, and once again, we will not infer that none exist.

■ The application also ignores Local Bankruptcy Rule 39 which states:

An order fixing the terms and conditions of employment of a professional person pursuant to section 328 of the Code shall be made only on an application stating the specific facts showing the reasonableness of the terms and conditions, including the terms of any retainer, hourly fee, or contingent fee arrangement.

The Klein application and Claman affidavit, read together, merely say that Klein has agreed to compensate the Firm at its usual hourly rates, but not what those rates are. Further, the proposed retention order suggests that Klein intends to pay the Firm upon the submission of bills without further application to the Court. The Firm must, however, apply to the Court for approval of its fees and expenses before Klein can pay it anything.

#### 2. "Excusable Neglect"

■ We suspect that Klein and the Firm may be able to cure these deficiencies. Consequently, and to avoid later litigation, we will consider whether Klein's failure to apply for retention at an earlier time was the result of "excusable neglect." In his undated Reply filed on October 17, 1995, Klein offers the following reasons: (1) citing *In re Snergy Properties, Inc.*, 130 B.R. 700 (Bankr. S.D.N.Y.1991), he thought that it was unnecessary to apply because his expenses and attorneys fees were administrative expenses; (2) he believed that he had properly retained counsel under his "state court" powers, and made the application only because the Court suggested that he do so at a July 16, 1995 [*sic*] hearing; and (3) additional motion practice seemed unnecessary because the duration of the receivership appeared indefinite and the issue was "collateral" to the main dispute between the debtor and Associates who were already engaged in litigation.

The reason for the delay in submitting the retention application weighs in favor of finding "excusable neglect" in light of the unsettled nature of the law governing the receiver's compensation. At the outset, we contrast the present situation with that of a trustee or creditors' committee seeking a

*nunc pro tunc* order based upon a confusion regarding the law. The Bankruptcy Code unquestionably requires that they obtain prior court approval to retain an attorney, and a claim of ignorance or confusion would *ring* hollow.

In comparison, the retention requirement for the continued receiver's attorney is confusing and unclear. There are few cases that address the requirement, the Bankruptcy Code does not expressly require it, and some provisions of the Bankruptcy Code arguably authorize the Court to compensate the continued receiver's attorneys without prior approval of their retention. Although *Snergy Properties, Inc.*—the case Klein relied on—dealt with a superseded receiver, the distinction may seem subtle to the nonbankruptcy practitioner and the rules governing receiver compensation are already sufficiently confusing.

In addition, Klein moved expeditiously to retain the Firm after we suggested that he do so. It is true that Klein waited over four weeks between our July 19 "suggestion" and his August 23, 1995 application. Nevertheless, Klein was drawn into the parties' litigation, participating with his lawyer's aid as a witness at the July 25, 1995 hearing, and submitted his application within nine days after the litigation was resolved consensually.

Most important, the debtor does not suffer any prejudice. *See In re Eagle Bus Mfg., Inc.*, 62 F.3d 730, 737 (5th Cir.1995) ("Under *Pioneer*, the central inquiry is whether the debtor will be prejudiced."). We have already confirmed the plan proposed by Associates which contemplates a sale of the property, and requires that Associates pay all of the priority and unsecured claims. Absent the unlikely event that the sale generates proceeds in excess of Associates' claim,[10] Associates will pay the other claims from its own funds.[11] Whether we allow or disallow Klein's and the Firm's fees and expenses, the debtor's principals will not receive any distribution on account of their interests, and there will be no property of the estate to vest

in the debtor following confirmation. *See* 11 U.S.C. § 1141(b).

We conclude, therefore, that Klein (and the Firm) have satisfied the "excusable neglect" standard, although they must still satisfy the disclosure requirements under the federal and local bankruptcy rules. One final question, however, still remains: how far back can the retention relate. On this issue, we hold that the Firm's *nunc pro tunc* retention cannot relate back to the period before June 21, 1995, when we issued an oral direction to continue Klein in possession pending the outcome of the evidentiary hearing.

Prior to that date, Klein continued to possess and administer the debtor's property in violation of the law. We recognize that Section 543 does not say when the receiver must turn over the property, *In re Watkins*, 63 B.R. 46, 48 (Bankr.D.Colo.1986), but the receiver must do so promptly. Once the receiver learns about the commencement of the case, he becomes a caretaker authorized to spend only to preserve the estate. If he does not turn over the property promptly and thwarts the debtor's right to control it, he prevents the debtor from administering its property for the benefit of the estate and with a view toward reorganization.

The responsibility for the failure to take prompt action should fall on Klein and the Firm, because Klein (or Associates) could have taken steps to avoid it. Had either filed a *timely* motion under 11 U.S.C. § 543(d)(1) and sought an expedited hearing, Klein could have remained in possession pending the resolution of the motion. *In re Watkins*, 63 B.R. at 48. Alternatively, Associates or Klein could have moved expeditiously by order to show cause, and asked for a temporary stay of the duty to comply with section 543 pending a resolution of the motion. Instead, they did nothing, leaving Klein in a violation of the unambiguous requirements of section 543(a) and (b). We decline to exercise our equitable powers to compensate

10. In the course of this case, we received evidence showing that Associates' claim exceeded, by a substantial amount, the value of the debtor's property that secured it.

11. We confirmed the plan on the condition, imposed under Fed.R.Bankr.P. 3020(a), that Associates deposit the amounts necessary to pay these claims and cover the costs of sale.

Klein or the Firm for the legal fees and expenses incurred during this period.

## CONCLUSION

We deny the application to retain the Firm without prejudice, to the extent that Klein is granted leave to file a new application, within fifteen days of this order, which relates back no further than June 21, 1995.

SO ORDERED.